Willie Lee MAYES, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–86–239–CR.

Court of Appeals of Texas,
Tyler.

Nov. 10, 1987.

Rehearing Denied Dec. 31, 1987.

Second Rehearing Denied April 7, 1988.

Richard E. Swift, Jr., Swift, Swift & Lawrence, Palestine, for appellant.

Richard Handorf, Dist. Atty., Palestine, Travis McDonald, Asst. Sp. Prosecutor, Texas Dept. of Corrections, Huntsville, for appellee.

COLLEY, Justice.

Willie Lee Mayes was convicted by a jury of aggravated kidnapping. Two prior aggravated robbery convictions were alleged by the State for enhancement of punishment. The jury found the allegations true, and assessed punishment at ninety-nine years' confinement.

Mayes presents eight points of error attacking the indictment, the charge, and the trial court's rulings on the admissibility of certain testimony. He also contends that the trial court erred in overruling his mistrial motion and in putting him to trial while under certain physical restraints. We reverse the judgment and remand the cause for a new trial.

Mayes, an inmate of the Department of Corrections, and his cell mate, Reginald Reed, abducted corrections officer James Bitenc on February 28, 1985. Bitenc was held hostage for approximately one hour during which time Mayes made demands of prison officials, such as release of certain inmates and better food. Mayes told the authorities during the course of the com-

mission of the offense that if his demands were not met, Bitenc would be killed. Mayes does not challenge the sufficiency of the evidence.

Under his first point Mayes asserts that the trial court erred in overruling his objection that the charge reduced the State's burden of proof by authorizing the jury to convict him if they found he "intentionally or knowingly" abducted Bitenc.

The indictment in pertinent part alleges that Mayes "did then and there intentionally abduct [the victim], without his consent, ...."

The court's charge authorized the jury to convict Mayes if they found "from the evidence beyond a reasonable doubt ... that [Mayes] did *intentionally or knowingly* abduct [the victim] without his consent, with intent to prevent his liberation, by using or threatening to use deadly force on [the victim] and with intent to use him as a shield or hostage, then you will find ... [Mayes] guilty of aggravated kidnapping as charged in the indictment." (Emphasis ours.)

As we move to address this point, we are acutely aware that the 63rd Legislature took great care in drafting the "new" penal code so that a person could not be convicted of any defined offense unless at the very time of his conduct he was acting with one or more carefully defined "culpable mental states." *See* section 6.02.[1]

Section 6.02(d) classifies culpable mental states "according to relative degrees, from highest to lowest as follows: (1) intentional; (2) knowing; ...."

Section 6.03 defines culpable mental states and subsection (a) provides that a person acts intentionally "when it is his *conscious objective or desire* to engage in the conduct, or *cause the result.*" Subsection (b) provides that a person acts knowingly "with respect to a result of his conduct *when he is aware that his conduct is reasonably certain to cause the result.*" A mere reading of these definitions of in-

tentional and knowing reveals the difficulty one encounters in attempting to make a distinction in result-type cases like kidnapping or murder. In fact, even the staff lawyers, Messers, Searcy & Patterson who were involved in the drafting of the new penal code, observed in the commentary at the foot of section 6.03:

> [I]n the context of a result-type offense element—death, property damage ...— the distinction between knowing and intentional is narrow, and is preserved [in this code] *only* because of the criminal law's traditional [common law] creation of specific intent offenses such as burglary, arson and theft. We say "only" because *there is little difference* in terms of blameworthiness, between one who *wills* a particular *result* and one who is *willing* for it to occur—between for example, ...; one who shoots into a moving car, intending to kill the driver, and one who shoots into a moving car he knows is occupied. The *formulated distinction* between *intentional* and *knowing,* as to results, it is thus between desiring the result and being reasonably certain that it will occur. (Emphasis added.)

As applicable here, under section 20.04, a person commits the offense of aggravated kidnapping if he intentionally restricts another person's movement by force or intimidation with intent to prevent that person's liberation by using or threatening to use deadly force, and with intent to use the person as a shield or hostage.

Under the authority of *Garcia v. State,* 640 S.W.2d 939 (Tex.Cr.App.1982), a pre-*Almanza*[2] case, we would be required to "automatically" reverse the trial court's judgment based on the narrow issue that the trial court fundamentally erred in authorizing the jury to convict Mayes of aggravated kidnapping based on their finding of the existence of an unplead mental state, to wit: "knowingly." However, *Almanza* teaches that the error in the charge in *Garcia,* though labeled "fundamental" by

---

1. All references to sections are to the Texas Penal Code Annotated (Vernon 1974) unless otherwise noted.

2. *Almanza v. State,* 686 S.W.2d 157, 160 (Tex.Cr. App.1984).

the *Garcia* court, may, in the light of the charge as a whole and the state of the evidence, be harmless. *Almanza*, 686 S.W.2d at 174. The question on review when the error was, as here, the subject of a timely objection, is whether the error is " 'calculated to injure the rights of a defendant' which means no more than there must be *some* harm to the accused." [3] *Almanza*, 686 S.W.2d at 171.

The evidence in this case that Mayes *intentionally* abducted Bitenc is overwhelming. John McGowan, a fellow inmate in the Beto Unit of the Department of Corrections, was produced by Mayes as a witness. McGowan testified that he saw Mayes holding Bitenc with a knife at Bitenc's throat. Mayes made an effort at trial to produce testimony to raise the duress defense embodied in section 8.05(a). [4]

Though we must recognize the weak theoretical distinction between "intentional" and "knowing," that is, the declaration by the legislature that "intentional" conduct in kidnapping offenses is more culpable than "knowing" conduct, we are not required, as we understand *Almanza*, to reverse the judgment in this cause, unless the inclusion in the court's charge of the unplead mental state of "knowingly" causes some harm to Mayes. In view of the state of the evidence and the charge as a whole, we conclude beyond a reasonable doubt that the error of including the culpable mental state of "knowingly" in the paragraph of the charge applying the law of aggravated kidnapping to the undisputed facts before the jury did not harm Mayes. The point is overruled.

By his second point of error Mayes contends the court erred in overruling his motion to quash the indictment on the ground that the aggravating element set forth in the charging instrument, viz., "with intent to use him as a hostage *or* shield," fails to put him on actual notice as to what allegation or theory the State intended to try him. That is, Mayes claims that the aggravating factor should have been alleged to show whether he acted with intent to use Bitenc as a "hostage" or whether he intended to use Bitenc as a "shield." We agree with the State's argument that under section 20.04(a)(2) an allegation that a person intentionally or knowingly abducts another "with the intent to use him as a shield or hostage," states but one method or means of committing aggravating kidnapping. The point is overruled.

By his third point of error Mayes complains that the trial court erred in trying him in chains. The record reveals that Mayes filed a pretrial motion, styled "Motion Not to be Tried in Jail Clothes and/or in Chains." After an evidentiary hearing the Honorable Melvin Whitaker, District Judge, overruled the motion on August 8, 1986, and noted the ruling on his docket sheet. Mayes reurged the motion on September 29, 1986, the date of jury selection in the case, before the then presiding judge, Honorable R. Wayne Lawrence.

Judge Lawrence reviewed the docket sheet entry made by Judge Whitaker, and without other explanation stated, "Judge Whitaker has heard the motion and afforded him an evidentiary hearing and I adopt the rulings of Judge Whitaker."

An accused's right to enjoy a presumption of innocence at his trial until such time as his guilt is established by the State beyond a reasonable doubt is not an independent right arising out of either the state or federal constitutions, but its denial may result in a violation of his right to a fair trial under the Fourteenth Amendment, [5] depending on the totality of the circum-

---

3. *Almanza's* rule of reversible error is applicable only to errors in the court's charge addressed in Tex.Code Crim.Proc.Ann. art. 36.19 (Vernon 1981). All other errors preserved for review, shown by the "appellate record" are reversible errors "unless the appellate court determines *beyond a reasonable doubt* that the error made no contribution to the conviction or to the punishment." Tex.R.App.P. 81(b)(2). (Emphasis ours.)

4. An affirmative defense which Mayes attempted to raise by presenting testimony that a rumor prevailed in his prison unit that certain Hispanic inmates had him on a "hit list." The trial court's refusal to submit that defense is the subject of Mayes' fifth point of error.

5. And under TEX.CONST. art. I, § 19.

stances surrounding his conviction. *Kentucky v. Whorton,* 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979).

In this state, the current Texas Penal Code [6] and the current Texas Code of Criminal Procedure [7] contain identical provisions establishing [8] such right. Nevertheless, the Court of Criminal Appeals for at least some sixty odd years has recognized the discretion of a trial judge to require the use of physical restraints on a prisoner before the bar as a means of protecting court officers and "bystanders" and maintaining order and decorum in the courtroom. *Gray v. State,* 99 Tex.Cr.R. 305, 268 S.W. 941, 943–944 (1925). Although the *Gray* court ruled against the accused, it stated:

> We desire to make it perfectly plain that we regard a trial with the prisoner in irons as obnoxious to the spirit of our laws and all ideas of justice, and it is only when the record brings the case clearly within one of the rare exceptions that we would consent for a conviction to stand. Before a judge should permit a case to proceed under such circumstances, he should be very sure of his ground.

*Gray,* 268 S.W. at 950.

Forty-nine years after *Gray* was decided, the Court of Criminal Appeals in *Walthall v. State,* 505 S.W.2d 898, 899 (1974), confronted with circumstances where the defendant was brought to trial handcuffed and in chains, held that the "display" of the restrained defendant "deprived [him] of the presumption of innocence," thereby presenting reversible error. The court observed that the trial judge must make the record affirmatively reflect "the precautions taken, including all bodily restraints ... together with [the trial judge's particularized reasons] for permitting the same. Such reasons ... should reflect why the [restraints] ... were required by particular conduct past or current on the part of the defendant." *Walthall,* 505 S.W.2d at 899.[9]

In this case at the August 8 hearing, Corrections Officer Murry Crutcher testified that he had known Mayes for approximately four years. That before the commission of the kidnapping offense, here involved, Mayes "had been involved in two incidents at Beto I." This testimony was in response to the question, "[h]as [Mayes] attacked guards in the past?" Crutcher also testified that Mayes "has a history of violence at T.D.C.," and that Mayes was considered "an escape risk." Crutcher, when asked, "Would you consider him a threat to the safety of the Judge, the jurors, and the attorneys in the case?," replied, "I'd consider him a threat to anyone in the courtroom." Crutcher also stated that Mayes was "a dangerous and violent person."

Billy Rieken, the "Transfer Officer" for the diagnostic unit of the Department of Corrections, described in detail (on direct and cross-examination) that the physical restraints on Mayes were a "belly-chain [sic] arms and legs [sic] with the little black box." Rieken stated that the "black box" was a "device [used] to handcuff ... inmates with their hands behind their backs," and "the ... black box separates the arms and keeps the hands going in one direction. It secures the handcuff itself."

Judge Whitaker, after hearing this testimony, overruled Mayes' motion to be tried unfettered with bodily restraints, but gave no express particular reasons for his ruling. The ruling was, however, based solely on the testimony of Crutcher which related Mayes' past conduct involving attacks on prison guards and Crutcher's opinion that Mayes, without the particular restraints,

---

**6.** Tex.Penal Code Ann. § 2.01 (Vernon 1974), reading:

Proof Beyond a Reasonable Doubt

All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial.

**7.** Tex.Code Crim.Proc.Ann. art. 38.03 (Vernon Supp.1987).

**8.** In fact, *continuing* the mandate of their precursors.

**9.** *See also Thompson v. State,* 514 S.W.2d 275 (Tex.Cr.App.1974).

would pose a threat to court officers and persons present in the courtroom at trial. Certainly that is also the clear implication of the ruling.

We have made a scrutiny of the testimony of Crutcher, and though part of his testimony expresses an opinion, albeit strongly stated, that Mayes is a "dangerous and violent person," he also testified to two separate attacks on prison guards by Mayes. This testimony and Crutcher's testimony that Mayes "took two officers hostage" in the present case and threatened "force or violence against them" in our opinion justifies the trial court's ruling on Mayes' motion. We conclude, therefore, that Judge Whitaker did not abuse his sound judicial discretion in requiring that Mayes be put to trial under the bodily restraints here employed. The third point of error is overruled.

Mayes alleges in his fourth point that the court reversibly erred in permitting testimony that he was confined in the "Administrative Segregation Wing of Beto I Unit of the ... Department of Corrections." As we understand the point of error Mayes is, in fact, complaining of the following testimony of Bitenc given in answer to the prosecutor's questions, shown as follows:

Q. What is administrative segregation?

A. Administrative segregation is where you house the inmates that are a threat to the general population of the prison, a threat to staff, threat to the other inmates and just generally cannot get along.

Q. Are inmates in administrative segregation treated differently than inmates in general population?

A. No, sir.

Q. In regards to security precautions are they treated differently?

A. In security precautions, yes.

Q. Why is that?

A. Because they're (this answer was interrupted by an objection)—

Q. All right. Did you take the fact that these were administrative segrega-

tion inmates into account in the way you dealt with the situation with Mayes coming up off that bunk? [10]

A. Yes I did.

Mayes made timely and proper objections to the above testimony sufficient to direct the court's attention to the error. Mayes argues the testimony was inadmissible under Tex.R.Crim.Evid. 404(b) and improperly introduced evidence of extraneous offenses or general acts of misconduct on his part. The State argues that no evidence was presented showing "why" Mayes was confined in the Administrative Segregation Wing, and that the State was entitled to prove where the offense occurred. We agree that no error was committed by informing the jury as to where the offense occurred, but Bitenc's testimony went further than that. His testimony characterizes Mayes as a person with a propensity for violence and assaultive behavior. Bitenc's quoted testimony was inadmissible, and the court erred in receiving it over proper objection. Tex.R.Crim.Evid. 404(b). Mayes' fourth point of error is sustained.

Mayes argues in his fifth point of error that the court erred in refusing to submit his requested affirmative defense of duress. Our review of the record reveals that no evidence was introduced from any source that would require the submission of that defense. Mayes contends, however, that the charge should have been given because evidence was presented that sometime prior to the day of the offense he learned of a rumor that certain Hispanic inmates had placed him on a "hit list" and that he was therefore fearful for his life.

Section 8.05 reads in part:

(a) It is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by threat of *imminent* death or serious bodily injury to himself....

....

---

**10.** The question was asked to explain Bitenc's action in striking Mayes as his cell mate Reed was attempting to overpower Bitenc by pulling Bitenc into the open cell of the prison unit which initiated the successful abduction of Bitenc by Mayes and Reed.

(c) compulsion within the meaning of this section exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure.... (Emphasis ours.)

The undisputed evidence demonstrates that at no time during the entire course of the commission of the instant offense, was Mayes compelled to engage in the criminal conduct by a threat from any person to kill or seriously injure him. The trial court correctly refused to submit the duress defense. The point is overruled.

Mayes' point six, by which he contends that a letter introduced into evidence to impeach a defense witness, Department of Corrections Inmate Rodney Joe Banks, was seized from Banks in violation of the Fourth Amendment is without merit and is overruled.

Mayes asserts by his seventh point of error that the court erred in overruling his mistrial motion based on certain testimony of State's witness James A. Collins, Warden of the Beto I Unit. Collins when asked, "[h]ad you seen Inmate Mayes before this [date of offense] occasion?," replied in the affirmative, and then unresponsively added, "I've had dealings with Inmate Mayes being one of our more volitile [sic] inmates I had occasion to talk to." The trial court immediately sustained Mayes' objection, and on Mayes' request instructed the jury to disregard Collins' "last answer." Mayes then made a motion for mistrial which was overruled. We conclude that Collins' unresponsive answer is of such a nature that the court's prompt instruction to the jury to disregard it, cured the error. *Thompson v. State*, 612 S.W.2d 925, 927–928 (Tex. Cr.App.1981). The point is overruled.

Finally, Mayes contends "the trial court erred in excluding evidence [of] the fact that certain Mexican inmates were not indicted in Anderson County Texas as a result of the attack on Inmate Mayes." The point is not briefed properly in accordance with the requirements of Tex.R.App.P.

74(d) and presents nothing for review. The point is overruled.

Our final task is to decide whether in light of the entire record the error complained of in the fourth point of error requires reversal of the judgment. Tex. R.App.P. 81(b)(2) mandates reversal "unless [we determine] ... beyond a reasonable doubt that the error made no contribution [either] to the conviction or to the punishment."

Mayes was tried in chains. Bitenc was erroneously permitted to testify that inmates housed in the Administrative Segregation Wing of Beto I were considered by prison authorities as dangerous, prone to violence, and constituted a threat not only to prison employees but to fellow inmates as well. In addition, Bitenc testified, in effect, that *he* considered Mayes to be a violent person. A clear implication of this testimony was that Mayes had been guilty of conduct deserving of his incarceration in the segregation wing. Given this testimony and the fact that Mayes was physically restrained [11] with chains during his trial (although we *are* persuaded that the error complained of in point four did not contribute to his conviction), we are unable to conclude *beyond a reasonable doubt* that the error made *no* contribution to the jury's decision to assess Mayes' punishment at ninety-nine years' confinement even upon due consideration of the fact that the jury found that Mayes had been convicted of two prior aggravated robbery offenses as alleged by the State for enhancement [12] of punishment.

Since the error was made at the guilt-innocence stage of the trial and not at the punishment stage, the provisions of current Tex.Code Crim.Proc.Ann. art. 44.29(b) [13] are inapplicable. Therefore we must reverse the judgment and remand the cause for a new trial, and it is so ORDERED.

11. Albeit within the trial court's sound discretion.

12. *See* section 12.42(d) under which the minimum punishment is twenty-five years.

13. Act of May 26, 1987, ch. 179, § 1, 1987 Tex. Sess.Law Serv. 2711, 2712 (Vernon).

## SUPPLEMENTAL OPINION ON MOTION FOR REHEARING

On November 10, 1987, we delivered our original opinion in this cause reversing the judgment of conviction and remanding the cause for a new trial.

The State timely filed a motion for rehearing contending we erred in sustaining Mayes' fourth point of error. Under that point Mayes alleges the trial court erred in admitting, over his objection at the guilt-innocence phase of his trial, evidence through the testimony of Officer Bitenc of prior extraneous offenses committed by Mayes during his incarceration in the Texas Department of Corrections.

First, the State argues that if the testimony of Bitenc was erroneously admitted, the error became harmless when Officer Johnson's testimony was subsequently received without objection on the part of Mayes. The State contends that Johnson testified to substantially the same facts that Bitenc did regarding the prison's policy of housing inmates in an "administrative segregation" unit. The record does not support that contention. Although Officers Johnson and Bitenc both testified about the character of "administrative segregation," their testimony on the factual reasons for segregation of inmates was quite different. *See Nicholas v. State,* 502 S.W.2d 169, 174 (Tex.Cr.App.1973).

Second, the State claims that Mayes waived his objections to Bitenc's testimony by cross-examining Bitenc about "administrative segregation." That claim is untenable. *Nicholas,* 502 S.W.2d at 174. Mayes' cross-examination of Bitenc was but an attempt to lessen the impact of Bitenc's inadmissible direct testimony regarding inmates housed in the "administrative segregation" unit, and did not operate to cure the error. *Id.*

Third, the State maintains Bitenc's testimony was admissible to explain why Bitenc struck Mayes when Mayes "started coming out of the bed [in the cell]" as Mayes' cell mate Reed was dragging Bitenc into the cell, and in response to issues raised by [Mayes] during cross-examination of Bitenc about the incident. The record reveals that Bitenc's characterization of "administrative segregation" was given on direct examination. Furthermore, Bitenc's conduct in striking Mayes under the circumstances of the case required no further explanation or justification.

Fourth, the State asserts that the "violent character evidence" implicit in Bitenc's wrongfully admitted testimony was admissible at the punishment phase under Tex. R.Crim.Evid. 404(c). Therefore, the State argues that since we concluded that the error made no contribution to Mayes' conviction, "the alleged error could not have caused the appellant any harm." We need only observe that the State *did not offer any evidence* of Mayes' character at the punishment phase as authorized by Tex. R.Crim.Evid. 404(c) and 405(a), (b).

We decline to engage in speculation as to what character evidence might have been, but was not introduced by the State at the punishment phase. The fact is, the testimony of Officer Bitenc, wrongfully admitted at the guilt-innocence phase, was before the jury for their consideration at the punishment phase, *Williams v. State,* 535 S.W.2d 637, 639 (Tex.Cr.App.1976); *Dunlap v. State,* 462 S.W.2d 591, 593 (Tex.Cr. App.1971), and the jury was so instructed.

The motion for rehearing is overruled.