**Ex parte Alvin Darrell SLATON.**

No. 46117.

Court of Criminal Appeals of Texas.

Sept. 5, 1972.

Hugh Lowe, Austin, for appellant.

Henry Wade, Dist. Atty., and Camille Elliott, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

### OPINION

ONION, Presiding Judge.

This is a post conviction application for a writ of habeas corpus brought under the provisions of Article 11.07, Vernon's Ann. C.C.P. Petitioner's conviction for possession of a narcotic drug, to wit: Fentanyl, was affirmed in 418 S.W.2d 508.

Without detailing the history of past habeas corpus applications in both state and federal courts, it is observed that the present application was first filed in the convicting court. See Ex parte Young, 418 S.W.2d 824 (Tex.Cr.App.1967). Such ap-

plication listed 15 grounds why petitioner's conviction should be set aside.

The trial court does not appear to have conducted an evidentiary hearing as such, but on December 7, 1971, a written stipulation between the petitioner, his counsel, and an assistant district attorney was filed. Said stipulation was to the effect that petitioner was required, over his objection, to appear before the jury throughout the trial, which resulted in his conviction, "while dressed in a jail uniform and wearing handcuffs." This stipulation related to two of petitioner's 15 grounds for relief.

The court filed findings of fact[1] in which it concluded that petitioner was required to appear throughout his jury trial in his jail uniform and in handcuffs, despite his objections. The court further found the affidavit and search warrant were defective since such instruments "allege possession of the narcotic drug in '. . . Johnnye Jenette Edwards, Alvin Slaton, and/or persons unknown . . .'" Wood v. State, 156 Tex.Cr.R. 419, 243 S.W.2d 31 (Tex.Cr.App.1951), was cited in support of such finding.

In light of the authority cited, it is presumed that the trial court meant to refer to the allegations in the instruments mentioned alleging that the premises in question to be searched were occupied, possessed or controlled by "Johnnye Jenette Edwards, Alvin Slaton, and/or persons unknown."

The trial court concluded the petitioner was entitled to the relief sought and the clerk was directed to transmit the record to this court. The record was received on August 14, 1972, nine months later.[2]

Thus, only three of appellant's 15 grounds were passed upon by the trial court.

Turning first to the question of trial in handcuffs, we observe that in Hernandez v. Beto, 443 F.2d 634, 636 (5th Cir. 1971), the Court sought to distinguish between trial in jail garb and trial in handcuffs. There, the Court wrote:

" . . . While '[f]reedom from shackling and manacling of a defendant during the trial of a criminal case has long been recognized as an important component of a fair and impartial trial,' Odell v. Hudspeth, 10 Cir. 1951, 189 F.2d 300, 302, cert. denied, 342 U.S. 873, 72 S.Ct. 116, 96 L.Ed. 656, it is undoubted that a trial judge has discretion to order that a defendant be handcuffed during trial to prevent his escape, to prevent him from injuring bystanders and officers of the court, or to maintain a quiet and peaceable trial. The wearing of prison garb certainly could have little or nothing to do with security precautions in this case. . . ."

In 56 Tex.Jur.2d Trial § 64, p. 400, it is written:

"Whether the accused may be restrained during trial by shackles or by any other form of confinement is a question to be determined by the judge, whose decision is governed by considerations of security. Ordinarily, however, a defendant should not be constrained during the trial, since a trial with the prisoner in irons is considered obnoxious to the spirit of justice."

See also Ramirez v. State, 383 S.W.2d 606 (Tex.Cr.App.1964); Clark v. State, 398 S.W.2d 763 (Tex.Cr.App.1966), and cases there cited; Garcia v. State, 435 S.W.2d 533 (Tex.Cr.App.1968); Cline v. State, 463 S.W.2d 441 (Tex.Cr.App. 1971), and Mallonee v. Lanier, 354 F.2d 940 (5th Cir. 1966).

---

1. These findings found in the record before this court bear no file mark by the district clerk.

2. See Article 11.07, supra, as amended 1967, as to time limitations for forwarding records to this court. The court reporter has ten days and the district clerk has thirty days to forward the entire record to this court. No extension was requested or granted by this court.

■ The stipulation entered in the habeas corpus hearing in the instant case reflects that the petitioner was handcuffed during the trial, over objection.

This complaint was not raised on appeal and the appellate record does not support the stipulation. We do observe that one of petitioner's appointed counsel in a "Second Motion For Continuance" alleged that when he went to the jail to confer with the petitioner on February 10, 1966, he was informed the petitioner had attempted suicide and was in the lunacy ward of the county jail and he was forced to confer while the petitioner was tied hand and foot to a cot to prevent injury to himself (petitioner).

During the trial, evidence offered by the petitioner on the issues of insanity reflected, among other things, that petitioner howled like a dog, had cut himself with a razor blade, and had set fire to himself.

If the petitioner was handcuffed, as the stipulation would indicate, it may well have been to prevent the petitioner from injuring himself and to maintain a peaceable trial. Under these circumstances, there would be no reason to set this conviction aside on that basis even if an objection was in fact made. The stipulation offered is simply insufficient to show that the court abused his discretion in ordering the petitioner handcuffed, if he was.

■ Appellant contends " . . . that if the record discloses no good reason for having the prisoner manacled during the trial the same will be cause for reversal . . . . " Gray v. State, 99 Tex.Cr. R. 305, 268 S.W. 941, 949 (1925). Gray's case was on direct appeal and in post conviction habeas corpus proceedings, the burden of proof is upon the petitioner.

Further, in Gray's case, the judgment was affirmed pointing out that the testimony offered on the motion for new trial showed Gray to be a danger to himself and others and that the trial judge did not abuse his discretion. Similar evidence is in the record before us.

And, in Cline v. State, 463 S.W.2d 441, 444 (Tex.Cr.App.1971), the court wrote in connection with the claim of being handcuffed during a portion of the trial that

"[a]ppellant has failed to show any evidence of injury or prejudice to him. Ramirez v. State, Tex.Cr.App., 383 S.W. 2d 606, and Xanthull v. State, Tex.Cr. App., 403 S.W.2d 807 . . . . "

Such latter view is contrary to that expressed in *Gray.*

Next, we concern ourselves with the question of trial in jail clothes, over objection. Much has been written on this question since the decision in Hernandez v. Beto, 443 F.2d 634 (5th Cir. 1971), wherein the court held " . . . that trying Hernandez in his prison clothing infringed a fundamental right—the presumption of innocence." 443 F.2d at 636, 637. Hernandez had made no objection. Although not changing its decision under the circumstances described, the Court, on rehearing, somewhat modified its position when it wrote, " . . . A defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error."

In Garcia v. Beto, 452 F.2d 655 (5th Cir. 1972), the same Court recognized that as a matter of strategy, an appellant often wants to be tried in jail clothing and that it is common for a defense counsel to prove before the jury how long the accused had been confined in jail.

In United States v. Fideler, 457 F.2d 921 (5th Cir. 1972), the same Court held that prison garb within the *Hernandez* rule means "an identifiable prison uniform, not civilian clothes belonging to the accused that he happened to be wearing in prison" (Webb County jail).

Applying *Hernandez* retroactively, this court in Ephraim v. State, 471 S.W.2d 798 (Tex.Cr.App.1971), held that reversible

error resulted when there was an objection to being tried in jail clothes, but recognizing the trial strategy angle the court held in Williams v. State, 477 S.W.2d 24 (Tex.Cr.App.1972), that "[a]bsent an objection, it is presumed that he was willing to go to trial in jail clothing."

And, only recently in Barber v. State, 477 S.W.2d 868 (Tex.Cr.App.1972), the court reviewed the pre and post *Hernandez* cases in Texas. See also Simmons v. State, 480 S.W.2d 633 (Tex.Cr.App.1972).

In the instant case, the stipulation entered at the habeas corpus hearing reflects that the petitioner was tried in jail clothes, over objection. While the stipulation finds no support in the appellate record on original appeal and, while this court is not bound by the findings of the trial court in post conviction matters, see Ex parte Bazemore, 430 S.W.2d 205 (Tex. Cr.App.1968), and cases there cited, we still find no basis for disregarding the same. It would appear that petitioner has brought himself within the holding of the *Ephraim* case. Nevertheless, we observe that the record on original appeal reflects that during the trial the petitioner called several witnesses who were jail inmates who described some of petitioner's bizarre acts while in jail. This testimony was offered on the issues of insanity. Thus, the question of harmless error, which was not discussed in *Ephraim,* is raised.

In order for a federal constitutional error to be held harmless, the court must be able to declare its belief that it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969).

All of these jail clothing cases " . . . must be considered in its (their) own factual context." Hernandez v. Beto, supra, 443 F.2d at 637.

In reviewing the issues involved in petitioner's trial, as discussed in 418 S.W.2d 508, we are unable to say that the error here reflected by the stipulation was harmless beyond a reasonable doubt.

The petitioner is entitled to the relief he seeks.

We would further note that the convicting court did not pass upon petitioner's contention that his competency to stand trial was not properly determined at his 1966 trial, a claim which was not raised on the original appeal. No motion or request for a pretrial determination of such competency was made. See Article 46.02 § 1, Vernon's Ann.C.C.P. (1965), then in existence. *Cf.* Townsend v. State, 427 S.W.2d 55 (Tex.Cr.App.1968); Morales v. State, 427 S.W.2d 51 (Tex.Cr.App.1968); McCarter v. State, 438 S.W.2d 575 (Tex.Cr. App.1969); Vardas v. State, (Tex.Cr.App. 1972 No. 44,632).

During the trial, however, much evidence was offered as to "present insanity" or competency to stand trial, as well as on the issue of insanity at the time of the commission of the alleged offense. The trial judge thought the issues sufficiently raised to submit both issues to the jury at the same time that the issue of guilt or innocence was submitted.

Without discussing the applicability of the *Townsend* rule, in absence of a timely request, we do observe, in light of the claim now advanced, that it would appear that the petitioner's competency to stand trial became sufficiently manifest during the trial so that the trial judge should have halted the trial and obtained a finding on that issue before proceeding further. See Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), Townsend v. State, supra, 427 S.W.2d at 63. Such failure may well have resulted in the violation of due process.

In the event of a retrial, the same procedure is not likely to be followed. See

Article 46.01, Vernon's Ann.C.C.P. (1965), as amended 1969.

Also, in the event of a retrial, we feel compelled to discuss the convicting court's findings as to the search warrant and the affidavit upon which it was based. Here again is a contention not urged on the original appeal. As earlier observed, the trial court found the affidavit and search warrant defective because of the allegation therein that the premises in question were occupied, etc., by "Johnnye Jenette Edwards, Alvin Slaton, and/or persons unknown . . . ."

Wood v. State, 156 Tex.Cr.R. 419, 243 S.W.2d 31 (Tex.Cr.App.1951), a liquor case, relied upon by the trial court in its finding, held that the use of the symbol "and/or" rendered the search warrant defective. *Wood* was based upon the requirement of Article 666–20, Vernon's Ann.P.C. (Texas Liquor Control Act), that

> "[s]earch warrants (for searching, seizing, and destroying alcoholic beverages) may be issued by any magistrate upon the affidavit of a credible person, setting forth the name or description of the owner or person in charge of the premises to be searched, or stating that his name and description are unknown . . . ."

Buck v. State, 156 Tex.Cr.R. 456, 243 S.W.2d 700 (1951), also a liquor case, followed the *Wood* decision and held that the disjunctive language (and/or) rendered the affidavit and search warrant defective. *Cf.* Hardy v. State, 156 Tex.Cr.R. 559, 244 S.W.2d 819, 820 (1952) (reversed on other grounds).

Glenn v. State, 158 Tex.Cr.R. 59, 252 S.W.2d 943 (Tex.Cr.App.1952), a liquor case, also followed the *Wood* decision not-

ing the express provisions of Article 666–20, supra.

The search warrant in the instant case was issued in 1965 under the provisions of Article 725b, Vernon's Ann.P.C. (Uniform Narcotic Drug Act), and the provisions of Title 6 of the 1925 Code of Criminal Procedure, then in effect (now, see Articles 18.01–18.30, Vernon's Ann.C.C.P., 1965).

While the provisions of the said Title 6 also applied to search warrants issued in liquor cases, the express provisions of Article 666–20, supra, were not applicable to the affidavit and search warrant in the instant case.

The use of the symbol "and/or" has been roundly condemned. See 118 A.L.R. 1367, 1368 (1938), supplemented in 154 A.L.R. 860 (1945). See also 1 Branch's Ann.P.C., 2d ed., § 523, p. 500. Only recently in Willis Sears Trucking Company v. Pate, 452 S.W.2d 782 (Tex.Civ.App.—Beaumont 1970), Justice Keith referred to the symbol as a "confusing hybrid" and a "neolegalism."

Certainly, use of the phrase should be carefully avoided and it is not recommended. However, even if it can be said that *Wood* and its related cases were correctly decided, we decline to extend them to narcotic cases or other cases to which Article 666–20, supra, has no application.[3]

To do so, in our opinion, would give a hypertechnical construction to search warrants and the affidavits upon which they are based. See United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L. Ed.2d 684 (1965). As Justice Keith observed in Willis Sears Trucking Company v. Pate, supra, "[i]t may well be that in attacking the phrase, we are among those

---

3. Article 309, Vernon's Ann.C.C.P., 1925 (now Article 18.06, Vernon's Ann.C.C.P., 1965), provided that the rules applicable to procuring a search warrant for searching for and seizing stolen property would also be applicable " . . . when the property to be searched for was acquired in any manner in violation of any pro-

vision of the Penal Code." While it may be argued that the language of former Article 316(4), Vernon's Ann.C.C.P., 1925 (now Article 18.13, Vernon's Ann. C.C.P., 1965), is somewhat similar to that of Article 666–20, supra, the decision in *Wood* was not based thereupon and we do not give to it the same interpretation.

who are 'tilting their lances at windmills' [45 Yale L.J. 918 (March 1936)]." The decision by Justice Keith further noted that "[h]aving used both (and/or), he expressed neither. . . . " If this be correct, then certainly the affidavit and search warrant in the instant case are not defective.

The petitioner is entitled to the relief he seeks for the reasons stated above. He is entitled to release from further confinement under the conviction attacked, and should be delivered to the Sheriff of Dallas County to answer the indictment in Cause No. C–66–116–L.

It is so ordered.

MORRISON and DOUGLAS, JJ., not participating.