David Leslie
CULVERHOUSE, Appellant,

v.

The STATE of Texas, Appellee.

No. 397–85.

Court of Criminal Appeals of Texas,
En Banc.

June 29, 1988.
Certiorari Denied Oct. 3, 1988.
See 109 S.Ct. 164.

Joe E. Shumate, Henderson, Jon R. "Randy" Farrar, Huntsville, for appellant.

William L. Ferguson, Co. Atty. and Richard W. White and Darrell Hyatt, Asst. Co. Attys., Henderson, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was found guilty by a jury of the offense of attempted murder. See V.T.C.A., Penal Code, § 15.01 and 19.02(a)(1). The jury assessed punishment at 20 years' imprisonment. The cause was tried in Walker County after a change of venue from Rusk County.

On appeal appellant contended, inter alia, the trial court "erred in compelling appellant to proceed in trial before jury in leg irons, handcuffs, and a belly band" and the trial court erred in refusing the request to dismiss standby counsel. The Court of Appeals rejected these points of error as well as the others, and affirmed the conviction in an unpublished opinion. *Culverhouse v. State* (Tex.App.—Houston [14th]—No. D14-83-823-CR—Feb. 28, 1985). Citing a finding of the trial judge as to the necessity of the shackles the Court of Appeals observed the issue was whether the trial

judge abused his discretion and concluded he did not. Likewise it found no abuse of discretion in the refusal to dismiss standby counsel.

We granted appellant's petition for discretionary review to determine the correctness of that decision.

The indictment charged appellant with attempted murder of Layton Cummings "by shooting the said Layton Cummings with a firearm." Cummings was a manager trainee of a Safeway Store in Henderson, who was shot by appellant, shortly after appellant had shot and killed his girlfriend with a machine gun. After shooting up the store, appellant fled to Jacksonville and "holed up" in a motel keeping police at bay for some 15 hours while falsely claiming to have a 16–year–old hostage whom he threatened to kill.

While the record is not altogether clear, it appears appellant was tried for murder prior to the instant case in Bowie County after a change of venue from Rusk County. At the instant trial appellant exercised his right to self-representation. See *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). His former appointed counsel was ordered to become standby counsel. At a pretrial hearing in Rusk County after the court admonished appellant of the disadvantages of representing himself, the record reflects:

"THE COURT: I'll further admonish you, Mr. Culverhouse, that the Court in this connection takes judicial notice of your conduct in a previous trial. Disruptive conduct, conduct that, in my opinion, endangered the safety of court officials and other people present at the trial, and by reason of that conduct I find it absolutely necessary for the safety of the court officials and spectators and all persons who might be a part of this trial to order that you be shackled throughout the course of the trial of this Cause No. 19, 568. That likewise will present further disadvantage to you in representing yourself. It will be inconvenient for you to do so. You will not be permitted to roam about the courtroom. You'll not be permitted to leave from your place at

Counsel table, by reason of that conduct and the necessity of ordering you be restrained throughout the course of the trial. Realizing that that will be the situation and the inconvenience and disadvantage that it will cause to you in your appearance before the Jury Panel and the Jury itself that's selected, is it still you desire to persist in self-representation in this cause?

"THE DEFENDANT: Yes, sir, no. I would object to being shackled in front of the Jury. It would be highly inflammatory and prejudicial, Your Honor. I'd like—I respectfully request that you, that this Court, that the Honorable Judge Donald R. Ross state specifically on the record exactly what you're talking about, the reason you're having me shackled.

"THE COURT: Well, the reason is that in the trial of Cause No. 19,567, I believe, on the docket of this court, it received another number when it was transferred to Bowie County, wherein you were charged with the offense of murder, first degree felony—do you recall the cause number?

"MR. SHUMATE: 83 F 89, Your Honor.

"THE COURT: 83 F 89 pending in the District Court of Bowie County, wherein you were tried in that cause and that court I believe the last week in April of this year, and the incident of violence in connection with that trial that you displayed in making an assault upon a court official during the course of the trial. That conduct makes it absolutely essential that you continue to be restrained as you are here in court today. And I will likewise order such restraint throughout the trial of this Cause No. 19,568 because of that conduct.

"THE DEFENDANT: Your Honor, and was that court official my Court-appointed attorney, Joe Shumate?

"THE COURT: That is correct.

"THE DEFENDANT: And did you personally witness this act of violence?

"THE COURT: Yes, sir.

"THE DEFENDANT: Well, sir, I don't see what that has to do with this trial and this court at this time.

"THE COURT: Well—

"THE DEFENDANT: It still would be highly inflammatory and prejudicial to the Jury.

"THE COURT: I understand that, but I have a responsibility for maintaining the decorum and peacefulness of the courtroom and orderly trial of this case that's pending against you, and to protect participants from violence. And I feel like that that consideration outweighs the inflammatory aspect of your appearance before the Jury under restraint.

"THE DEFENDANT: Well, Your Honor, that was the reason that I asked —that I first asked that my Court-appointed attorney, Joe Shumate, be dismissed from this case because of that incident where I attacked Mr. Shumate.

"THE COURT: Now, understanding what the Court intends to do, regarding restraints throughout this trial, I once again ask you, do you still persist in self-representation?

"THE DEFENDANT: Yes, sir.

\* \* \* \* \* \*

"THE DEFENDANT: I'm not looking for any delay, Your Honor. I'd like to get this thing over as soon as possible. I would object to Mr. Shumate being stand-by counsel, because of the things we talked about earlier where I attacked Mr. Shumate. I believe I broke some bones in his face and broke his nose. Is that correct, Joe?

"MR. SHUMATE: You have to ask the doctors, David.

"THE COURT: That will be enough of that, okay?...."

Subsequently, and again before trial in Walker County and after the granting of the motion to shuffle the jury panel, the record reflects:

"MR. CULVERHOUSE: Your Honor, if it please the Court, I would respectfully request that the handcuffs and this chain wrapped around my waist and these leg irons be taken off of me at this time, Your Honor. I feel that if I'm to stand trial shackled in front of the Jury, Your Honor, it is so prejudicial and inflammatory, it would in fact destroy the presumption of innocence that is guaranteed me under the Constitution of the United States of America. According to the law, the Defendant will be presumed innocent until proven guilty beyond a reasonable doubt. I don't see how the jury can presume me innocent, Your Honor, by witnessing me wearing handcuffs and shackled during the trial and leg irons. There's a wrong way and there's a right way to try a man in this country. And to try him in shackles is unconstitutional, Your Honor. It destroys the Defendant's right to a fair trial, to be afforded a fair trial by unbiased and unprejudiced jurors. At this time I would respectfully request the court to show me the law that states that a Judge can force a Defendant to stand trial wearing shackles in front of a Jury, Your Honor.

"THE COURT: The Court has already ruled on that motion once. I will overrule your motion and deny your request to show you the law. I will state for the record once again that the Court orders you shackled throughout the duration of this trial because the Court feels it deems it absolutely necessary to protect the safety and security of this courtroom and the officers of this court. And the reason for that being that on the 27th day of April, 1983, in the trial of a companion case to this one in another courtroom the Defendant became violent in the course of that trial, assaulted an officer of this court being his own Court-appointed attorney and because of that conduct, the Court deems it absolutely essential and necessary for the security and safety of the officers of this court and anyone else that you be shackled throughout this trial.

"MR. CULVERHOUSE: Your Honor, were you an eyewitness to this incident?

"THE COURT: That's the end of the ruling. I will not engage in any kind of argument or colloquy with the Defendant

over it. That's the ruling of the Court, and that's the way it will be.

"MR. CULVERHOUSE: Well, Your Honor, I wasn't trying to start an argument."

The foregoing excerpts from the record contain the basis for the trial court's order.[1]

■ The State concedes that appellant was restrained at all times during the trial as he alleges, and argues that such restraint was both necessary and proper under the circumstances.

Generally, a defendant has a right to be tried without being handcuffed. *Lyons v. State*, 668 S.W.2d 767 (Tex.App.—Houston [1st Dist.] 1984) (pet. ref'd).

In *Gray v. State*, 99 Tex.Cr.R. 305, 268 S.W. 941, 950 (Tex.Cr.App.1924), this Court stated:

"We desire to make it perfectly plain that we regard a trial with the prisoner in irons as obnoxious to the spirit of our laws and all ideas of justice, and it is only when the record brings the case clearly within one of the rare exceptions that we would consent for a conviction to stand. Before a judge should permit a case to proceed under such circumstances he should be very sure of his ground.

"The 'rare exceptions' are:

" * * *

"... if, in the sound discretion of the court, it appears necessary to retain his shackles to prevent the escape or self-destruction of the prisoner, or to prevent him from injuring bystanders or officers of the court, or if necessary to maintain a quiet and peaceable trial, the court may try the prisoner without having the shackles removed; his action being subject to the closest scrutiny and review by the appellate court." *Gray*, supra (opinion on rehearing), at 949.

In *Gammage v. State*, 630 S.W.2d 309, 313 (Tex.App.—San Antonio 1982), pet. ref'd, it was stated:

"Among the most precious rights afforded an accused is the right to be tried before an impartial jury with the presumption of innocence fully intact and free of prejudice. Initially interwoven into the foregoing rights is the proposition that no accused should ever be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of 'exceptional circumstances' or a 'manifest need' for such restraints. *Gray v. State*, 99 Tex.Crim.R. 350, 268 S.W. 941 (1924); *Rainey v. State*, 20 Tex.App. 455 (1886)."

In *Hernandez v. Beto*, 443 F.2d 634, 636 (5th Cir.1971), a wearing of jail garb at trial case, the Court also wrote:

"... while '[f]reedom from shackling and manacling of a defendant during the trial of a criminal case has long been recognized as an important component of a fair and impartial trial,' *Odell v. Hudspeth*, 10th Cir.1951, 189 F.2d 300, 302, cert. denied 342 U.S. 873, 72 S.Ct. 116, 96 L.Ed.2d 656, it is undoubted that a trial judge has discretion to order that a defendant be handcuffed during trial to prevent his escape, to prevent him from injuring bystanders and officers of the court, or to maintain a quiet and peaceable trial."

If justified, then, it is within the discretion of the trial judge to require that the defendant be handcuffed or shackled.

1. The State in its brief before this Court stated that while appellant alleged his prior violent conduct described was a result of his displeasure with services of his attorney that this was not necessarily true. "Appellant struck his attorney and lunged in the direction of an automatic weapon and ammunition that had been placed in evidence. It is equally likely that appellant's attack on his counsel was more in the nature of a planned distraction in a bid for escape." Assertions in briefs cannot be accepted as evidence unless supported by the record. The State does point out that the trial judge in the instant case had witnessed the prior assault. This is supported by the record.

In a "letter and affidavit" which appellant filed in the Court of Appeals and asked to be attached to his petition for discretionary review he acknowledged he had been in a fight with his court-appointed counsel, Joe E. Shumate, and that acting in self-defense he struck Shumate with a metal water pitcher breaking Shumate's nose and cheekbone, and that this occurred several weeks before the trial of the instant case.

*Freeman v. State,* 556 S.W.2d 287, 306 (Tex.Cr.App.1977), cert. den. 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 794; *Ex parte Slaton,* 484 S.W.2d 102 (Tex.Cr.App.1972); *Hernandez v. Beto,* supra; *Kennedy v. Cardwell,* 487 F.2d 101 (6th Cir.1973). See also *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

While "no person should be tried while shackled ... except as a last resort, ... [still] trial judges confronted with disruptive contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." *Illinois v. Allen,* 397 U.S. 337, 343–344, 90 S.Ct. 1057, 1060–1061, 25 L.Ed.2d 353 (1970).

In cases where a defendant is tried in handcuffs, etc., the trial judge should have the record clearly reflect the reasons therefor. The record must affirmatively reflect those reasons, not in general terms but with particularity. *Freeman,* supra. See also *Romero v. State,* 493 S.W.2d 206 (Tex. Cr.App.1973); *Walthall v. State,* 505 S.W. 2d 898 (Tex.Cr.App.1974); *Moore v. State,* 535 S.W.2d 357 (Tex.Cr.App.1976).[2]

Where the record fails to affirmatively reflect sufficient reasons justifying the trial court's action in allowing the defendant to be seen by the jury wearing handcuffs, shackles, etc., such action of the trial court constitutes an abuse of discretion and reversible error will result. *Moore v. State,* supra.

Of course, as the Court of Appeals correctly noted, the issue to be decided here is whether the trial court abused its discretion in requiring that appellant be tried while shackled before the jury. See *Illinois v. Allen,* 397 U.S. 337, 342, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970); *Zygadlo v. Wainwright,* 720 F.2d 1221 (11th Cir. 1983), cert. den. 466 U.S. 941, 104 S.Ct. 1921, 80 L.Ed.2d 468 (1984); *Woodard v. Perrin,* 692 F.2d 220 (1st Cir.1982); *Bibbs v. Wyrick,* 526 F.2d 226 (8th Cir.1975), cert.

den. 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976); *Freeman v. State,* 556 S.W.2d 287 (Tex.Cr.App.1977), cert. den. 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 794 (1978); *Kimithi v. State,* 546 S.W.2d 323 (Tex.Cr. App.1977); *Moore v. State,* 535 S.W.2d 357 (Tex.Cr.App.1976); *Walthall v. State,* 505 S.W.2d 898 (Tex.Cr.App.1974); *Ex parte Slaton,* 484 S.W.2d 102 (Tex.Cr.App.1972); *Morris v. State,* 382 S.W.2d 259 (Tex.Cr. App.1964); *Gray v. State,* 99 Tex.Cr.R. 305, 268 S.W. 941 (Tex.Cr.App.1924).

In determining whether there is an abuse of discretion each case must be assayed on its own facts as reflected by the appellant record.

In the instant case the record affirmatively and without dispute reflects that appellant had assaulted his own court-appointed counsel in court several weeks before the instant trial, and that the trial judge in the instant case was a witness to such assault. It was this assault upon an officer of the court that was the basis of the order of restraint in the instant case, and it is observed that the same attorney was assigned by the court as standby counsel in the instant case after appellant exercised his right to self-representation. While the record was not developed as well as it might have been, and while another judge might have ruled differently, we cannot conclude that appellant has shown that there was an abuse of discretion. See *Morris v. State,* 382 S.W.2d 259 (Tex.Cr.App. 1964). The mere fact that the appellant demonstrated good conduct during the trial does not mean that the decision to restrain him was an abuse of discretion. See *Harrell v. Israel,* 672 F.2d 632 (7th Cir.1982); *Loux v. United States,* 389 F.2d 911 (9th Cir.1968), cert. den. 393 U.S. 867, 89 S.Ct. 151, 21 L.Ed.2d 135 (1968); *Morris,* supra.

■ In a second ground of review appellant contends the Court of Appeals wrongly decided that there was no error in the

---

**2.** This Court has never mandated a formal hearing. In *Gammage v. State,* 630 S.W.2d 309, 314 (Tex.App.—San Antonio 1982—pet. ref'd), the San Antonio Court of Appeals recommended that a hearing should be held. This may be advisable, particularly where the acts and facts

supporting the court's order of restraint did not occur in the court's presence or were not within his personal knowledge. The cases of this Court cited by *Gammage* did not hold that a formal hearing was required.

trial court's refusal to grant appellant's request to dismiss appointed standby counsel.

At the time of the hearings on the pretrial motions in Rusk County Joe Shumate, court-appointed counsel, informed the court that appellant wanted him dismissed. The request was denied. Thereafter, appellant asserted his right to self-representation, and the court then appointed attorney Shumate as standby counsel. Appellant then asked that Shumate be removed from the case all together and Shumate joined in the request. The request was denied. Immediately prior to trial in Walker County appellant again orally asked that Shumate be removed because of conflict of interest and requested the appointment of other counsel. The motion was denied.

On appeal the Court of Appeals wrote:

"In his sixth and seventh grounds of error, appellant contends the trial court erred in permitting court-appointed, standby counsel to continue representing appellant in the face of a conflict of interest. Appellant represented himself at trial. The trial court refused appellant's motion to dismiss and counsel's motion to withdraw on the basis of personalities. There is no evidence in the record that counsel suffered from a conflict of interest. *Pollan v. State,* 612 S.W.2d 594 (Tex.Crim.App.1981). Whether to dismiss standby counsel on the basis of a conflict of personalities lies within the sound discretion of the trial court. In the absence of a showing of abuse, no error is preserved. Appellant's sixth and seventh grounds of error are overruled."

We agree. A court has the authority to appoint standby counsel even over the objections of an unwilling defendant. *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 2541, n. 46, 45 L.Ed.2d 562, 581, n. 46 (1975); *Wiggins v. Estelle,* 681 F.2d 266, 273 (5th Cir.1982). Such counsel in the instant case only briefly participated in the trial proceedings and then only upon appellant's request and with the trial court's approval. Such action was for appellant's benefit. Counsel did not interfere with appellant's pro se representation. There was no unsolicited, unwarranted participation by court-appointed standby counsel so as to interfere with appellant's Sixth Amendment right to self-representation. Once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearance by counsel on behalf of the defendant must be presumed to be with his acquiescence until the defendant expressly renews his request that standby counsel be silenced. *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122, rehearing denied, 465 U.S. 1112, 104 S.Ct. 1620, 80 L.Ed.2d 148, on remand, 729 F.2d 1026, on reconsideration; *Wiggins v. Procunier,* 753 F.2d 1318 (5th Cir.1985). A defendant may waive his right to represent himself once it has been asserted. *Funderburg v. State,* 717 S.W.2d 637 (Tex.Cr.App.1986).

The formal assertion of conflict of interest with standby counsel from Rusk County and request for the appointment of other counsel came only after the change of venue to Walker County and just prior to trial. A request for change of counsel cannot be made in a criminal proceeding so as to obstruct orderly procedure in the courts or to interfere with the fair administration of justice. *Blankenship v. State,* 673 S.W.2d 578 (Tex.Cr.App.1984). A defendant may not use his right to counsel to manipulate the court or to delay his trial. There was no abuse of discretion. *Martin v. State,* 460 S.W.2d 919 (Tex.Cr.App.1970). The contention is overruled.

The judgment of the Court of Appeals is affirmed.

McCORMICK, J., concurs in the result.

MILLER, J., dissents to the disposition of the first ground of review and joins the majority's disposition of the second ground of error.

CLINTON, Judge, dissenting.

In *Moreno v. State,* 755 S.W.2d 866 (Tex. Cr.App.), the Court makes cogent observa-

tions about a particular rule that comes to be characterized as "axiomatic," *viz:*

"... This rule is by now axiomatic as well as committed to the memories of most. However, the drawback of such axiomatic law is that it becomes a rule which is often cited yet rarely seriously considered—a habit the State appropriately terms 'lip service.'"

At 867.

"Lip service" is an avowal of allegiance that goes no further than expression in words; an utterance or expression from the lips only, and hence insincere.

Yesterday the Houston (14th) Court of Appeals and today this Court give lip service to the precious right of an accused to go to trial clothed in a fundamental presumption of innocence before an impartial jury, free of prejudice inherently engendered by imposition of bodily restraints of "manacles, leg irons, and belly bands."

Furthermore, the Houston (14th) Court of Appeals and now this Court give lip service to the constitutional right of an accused to represent himself, unencumbered by presence of "standby" counsel, the victim of a prior assault during the course of an earlier trial who, himself, moved to withdraw on account of "a conflict of personalities."

Indeed, from the colloquies set out in the opinion of this Court it appears that the trial court sought to hold hostage exercise of one right against the other. Thus, understanding the "inconvenience and disadvantage" of such appearance before the jury, "is it still your desire to persist in self-representation in this cause," at 2, and "do you still persist in self-representation," at 3. That is to say to appellant, "Your other option is to go to trial with assistance of counsel, your past physical rejection of whom now serves to destroy your presumption of innocence."

In short, we render "lip service" to constitutional rights denied in exercise of discretion.

I dissent.

TEAGUE, Judge, dissenting.

Because this Court errs grievously in denying David Leslie Culverhouse, henceforth appellant, relief, I respectfully dissent.

From my reading of this record, and the record in our P.D.R. cause number 0800–86, which P.D.R. was refused over my vote to grant, which cause is unrelated to this cause, I have concluded that appellant is one defendant who has been terribly mistreated by our criminal justice system. The majority opinion, by denying him relief, aggravates this mistreatment. I find that the basis for the majority opinion, in rejecting appellant's first contention, is that it relies upon the trial judge's erroneously taking "judicial notice" of what occurred when appellant was tried in Bowie County, on a change of venue from Rusk County. For reasons I will give, the trial judge clearly erred in taking judicial notice of what occurred in Bowie County. At no time did the trial judge testify under oath in this cause. The record makes it obvious to me that he does not care too much for appellant.

The facts relating to the Bowie County case reflect that appellant wanted to represent himself, but the trial judge refused his request. This record makes it sufficiently clear that this act of the trial judge, in overruling appellant's request, was totally erroneous under our present law. The act was so devastating and demoralizing to appellant that it caused him to become so frustrated that he picked up a water pitcher and struck his court appointed attorney, as a result of which counsel sustained a broken nose, a broken cheek bone, and lacerations to his body. The record does not reflect whether criminal charges were filed against appellant for the assault on his attorney. Notwithstanding what appellant had done to his attorney, the trial judge amazingly forced counsel to remain on the case as standby counsel. It is clear by correspondence on file with this Court that appellant did not care too much for his attorney and did not want him anywhere near him or the courtroom in which his case was tried.

Given the above and what I shall hereinafter state, I find that this Court has the audacity to hold that the trial judge did not abuse his discretion in causing appellant during his trial, in the presence of the jury, to be restrained by handcuffs, leg irons, and a belly chain. I further find that this Court has the audacity to hold that the trial judge did not err in dismissing his court appointed attorney from the case. I again stress that the record is clear that appellant did not want this attorney anywhere near him when his cause was tried before the jury, and the record is also clear that counsel did not want to be or get near appellant. Given the circumstances of what had previously occurred, this attorney should not have been permitted, much less forced, to get within a mile of appellant.

The facts before us reflect that for unknown reasons the appellant shot and killed his girlfriend in a Safeway Store that was located in Henderson, and thereafter, inside of the same store, when making his escape, he shot a store manager trainee. On April 29, 1983, the appellant was tried and convicted in Bowie County, on a change of venue from Rusk County, for killing his girlfriend, for which he received a life sentence. The record in this cause does not reflect whether that conviction was appealed.[1]

On July 19, 1983, the appellant was tried and convicted by a jury in Walker County, on a change of venue from Rusk County, for attempting to murder the store manager trainee, which is this cause. Appellant defended himself, but, over objection, had available for consultation purposes court appointed "standby" counsel. The jury also assessed punishment at twenty years' confinement in the Department of Corrections, which is the maximum number of years that could be assessed. The trial judge ordered this sentence "stacked" onto the life sentence that the appellant had sustained in Bowie County. In reference to the issue whether the trial judge was warranted in ordering the appellant restrained in the courtroom and in the pres-

ence of the jury during the trial of this cause, the record only reflects the following:

On June 20, 1983, the issue whether the appellant should be restrained through the use of handcuffs, leg irons, and a belly chain was raised, not by the prosecution, but by the trial judge himself. The trial judge, without conducting a hearing on the subject, summarily ordered that the appellant "be shackled throughout the course of the trial of this Cause No. 19,568." The appellant personally requested that the trial judge give his reasons for such order. The trial judge only stated the following into the record: "Well, the reason is that in the trial of Cause No. 567, I believe, on the docket of this court, it received another number when it was transferred to Bowie County, wherein you were tried in that cause and that court I believe last week in April of this year, and the incident of violence in connection with that trial that you displayed in making an assault upon a court official [his court appointed attorney] during the course of the trial ..." The appellant responded that the assault on his court appointed attorney had taken place only after his request to dismiss his court appointed counsel from the case was denied.

Although the record of the Bowie County trial is not in the record of this cause, thus, we are not privy to the details of the above assault, the record of this cause does, however, reflect or indicate that in the course of the assault, court appointed counsel sustained a broken nose, a broken cheek bone, and lacerations to the body. Notwithstanding the injuries that counsel had sustained, after it was determined that the appellant would represent himself *pro se* in this cause, counsel was again appointed to represent the appellant, but this time, except for a very short period of time near the close of the proceedings in this cause, he only represented the appellant as "standby" counsel.

---

1. I have learned, however, that this conviction was appealed to the Texarkana Court of Appeals, which affirmed the conviction, and that appellant did not file a petition for discretionary review with that court.

On July 18, 1983, after announcements of ready were obtained from the parties, the appellant requested that "the handcuffs and this chain wrapped around my waist and these leg irons be taken off of me at this time." The appellant also stated the following, which statement is neither controverted nor disputed: "Your Honor ... I have not caused any trouble in this court." The appellant's request was summarily denied. Before the jury panel was brought into the courtroom, the appellant again told the judge: "Your Honor, I give [you] my word I'm not going to cause any trouble." His plea fell on deaf ears.

When the appellant personally voir dired the jury panel, he again requested the trial judge to order that "the shackles and handcuffs and leg irons be taken off at this time." That request was ignored by the trial judge.

The record also reflects that when the appellant personally argued to the jury, in addition to being restrained with handcuffs, leg irons and a belly chain, he was accompanied to the jury box by a deputy sheriff.

Unfortunately, because the record does not contain a photograph of the way the appellant looked to the jury when he was in the courtroom and when he personally argued his case to the jury, I cannot actually say how he must have then looked to the jury.

Does this record support the drastic action of the trial judge in ordering that the appellant, at all times during his trial, be restrained through the use of handcuffs, leg irons and a belt in the form of a belly chain? Because I do not find that this record supported such drastic action on the part of the trial judge, I dissent to the majority opinion's holding that the trial judge did not err by ordering appellant so shackled and manacled during his trial.

As previously pointed out, no hearing was ever conducted by the trial judge on why it was necessary for him to take the extreme and drastic measure in ordering that the appellant be at all times during his trial restrained through the use of handcuffs, leg irons, and a belly chain. The only support in the record for the trial judge's order rests solely on the trial judge's statements that he made that referred to what he had personally observed during the trial that took place in Bowie County.

What the trial judge may have personally observed during the trial that took place in Bowie County is, however, not "Judicial Notice" or "Judicial Knowledge", as those terms are ordinarily understood by most members of the bench and bar. "Judicial Notice" or "Judicial Knowledge" is either notice or knowledge of that which is so notorious that *everybody, including judges,* knows it, and hence it need not be proved. *Black's Law Dictionary,* p. 761 (Fifth Edition, 1979).

Notwithstanding what a majority of this Court stated and held in *Barrientez v. State,* 500 S.W.2d 474 (Tex.Cr.App.1973), and *Bradley v. State,* 608 S.W.2d 652 (Tex.Cr.App.1980), that in a revocation of probation proceeding the trial judge could, over objection, take "Judicial Notice" of the testimony of a prior trial conducted before him for the purpose of supporting the allegations of the State's revocation motion, but because revocation proceedings are by their very nature not trials on the merits of a lawsuit, this causes those cases to be distinguishable from this cause. The usual rules governing "Judicial Notice" or "Judicial Knowledge" should be applicable to this cause.

In 1 *Texas Practice* 195–196, Ray, *Law of Evidence* (Third Edition), Section 152, the following is pointed out: "[I]t is well settled that the scope of the exercise of the function of judicial notice is not coextensive with the personal knowledge of the individual judge. Personal knowledge is not judicial knowledge. The judge may personally know a fact of which he cannot take judicial notice." Also see *Barrientez v. State,* supra (Onion, P.J., dissenting opinion); *Bradley v. State,* supra (Onion, P.J., and Clinton, J., dissenting opinions); and *Wilson v. State,* 677 S.W.2d 518 (Tex.Cr.App. 1984).

Thus, there is not any legal evidence or testimony in this record that might support

the trial judge's order restraining the appellant through the use of handcuffs, leg irons, and a belly chain.

It is now axiomatic that "[N]o person should be tried while shackled ... except as a last resort." *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

This is because one of the most precious rights afforded an accused person is the right to be tried before an impartial jury with the presumption of innocence fully intact and free of prejudice. Concomitant with this right is the right of the accused to be "brought before the court with the appearance, dignity and self-respect of a free and innocent man." From the above right flows the principle of law that no accused person should ever be subjected to physical restraints of any kind during the trial and in the presence of the jury—unless there is a showing of "exceptional circumstances" or a "manifest need" for such restraints. *Gammage v. State,* 630 S.W.2d 309, 313 (Tex.App.—San Antonio 1982) (State's P.D. R. refused.)

In *Gammage v. State,* supra, Justice Cantu of the San Antonio Court of Appeals, the author of that opinion, pointed out that exceptional circumstances may exist when it is established that *during the trial* the accused might escape or attempt to escape from the courtroom; has made *during the trial* threats of physical violence on court personnel and officers of the court; has physically resisted *during the trial* being brought into or kept inside of the courtroom; has repeatedly *during the trial* interrupted the court proceedings; has *during the trial* physically assaulted one or more persons; has *during the trial* persisted in unruly conduct while in the courtroom; or has *during the trial* engaged in or threatened nonconforming conduct. (314) The record in this cause is clear that none of the above ever took place or occurred during the appellant's trial in Walker County.

When an accused person must be restrained *during the trial,* in the courtroom and in the presence of the jury, the record should clearly reflect that such was abso-lutely necessary and that no other reasonable alternatives were available. This is because "the sight of shackles ... might have a significant effect on the jury's feeling about the defendant, and the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold." *Illinois v. Allen,* 397 U.S., at 344, 90 S.Ct., at 1061, 25 L.Ed.2d, at 359. And that is why a hearing on the subject should always be held, because without such hearing the basis for such an order restraining the accused amounts only to speculation on the part of the trial judge as to what the accused might do *during his trial.. Gammage v. State,* supra. Unless the record clearly reflects justifiable reasons why the accused person should be restrained *during his trial,* as well as showing that no other alternatives were available, a trial judge should never resort to restraining the accused, because "no person should be tried while shackled ... except as a last resort." *Illinois v. Allen,* supra.

The record of this cause is clear that at no time during the trial of this cause did the appellant engage in speech or conduct that might be considered noisy, disorderly, boisterous, or disruptive, nor is there anything in this record that might reflect or indicate that at any time the appellant was ever disrespectful to the trial judge. To the contrary, in representing himself, the appellant at all times conducted himself in a way that even "Miss Manners" might approve.

The trial judge in this cause clearly abused his discretion in this cause by ordering that appellant be restrained *during his trial* and in the presence of the jury, through the use of handcuffs, leg irons, and a belly chain. The appellant is clearly entitled to have his conviction set aside for this reason, if no other. To this Court's upholding his conviction, I respectfully dissent.