Opinion issued November 9, 2006








     







In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00767-CR




CHARONE WYNN, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 178th District Court
Harris County, Texas
Trial Court Cause No. 1012112




O P I N I O N

          A jury found appellant, Charone Wynn, guilty of aggravated robbery, and,
having found true two enhancement paragraphs alleging prior convictions for
aggravated assault and possession of a controlled substance, the trial court sentenced
him to life in prison. In four points of error, appellant contends that the trial court
violated his due process rights under the constitutions of the United States and Texas
by (1) ordering him to be shackled for the duration of his trial and (2) assessing an
excessive prison sentence. 
          We affirm. 
BACKGROUND 
          On January 5, 2005, at approximately 4:00 a.m., appellant entered a Denny’s
restaurant near Interstate 45 and Little York Road. He was greeted by the
complainant, Tria Rhone, who worked as the restaurant’s night manager. Rhone led
appellant to a table, where he ordered a meal. After he finished eating, appellant
walked into the restaurant’s kitchen, placed a handgun to Rhone’s head, and
demanded money from the safe. Rhone complied with appellant’s demands, opening
the safe and handing its contents to appellant. Dissatisfied with the amount of money
inside the safe, appellant pressed the gun to Rhone’s head stating, “This is all you
got? You’re going to die for this.”
          Aware that a robbery was in progress, waitress Evelin Pedraza warned the
restaurant’s patrons and instructed them to leave. In the ensuing commotion, patron
Lorenzo Yerba ran into the restaurant’s kitchen area, where he witnessed appellant
holding a handgun to Rhone’s head. Yerba turned to head for the front of the
restaurant. When Yerba reentered the dining area, appellant was standing near the
cash register, which he ordered Yerba to open. After Yerba told him that he did not
work at the restaurant, appellant demanded Yerba’s wallet, which Yerba gave to him. 
Appellant then left the restaurant through the front door, hopped on a bicycle, and
rode toward a Houston Metro Park & Ride (“Park & Ride”). 
          Called by a patron using Pedraza’s cell phone, the police arrived within
minutes of appellant’s departure. Rhone and other customers provided the police
with a description of appellant and told them that he had biked toward the nearby
Park & Ride. Houston Police Officer B. Chebret received a radio dispatch that
appellant, armed with a gun, was in the Park & Ride. Officer Chebret drove to the
Park & Ride’s north entrance, where he saw appellant riding his bicycle. After
appellant ignored Officer Chebret’s commands to stop, Officer Chebret used his taser
to subdue him after a brief chase.
          Captured approximately ten minutes after the robbery, appellant was returned
to the restaurant by Officer Chebret. There, appellant was positively identified by
Rhone and Yerba, both of whom also positively identified him in open court.


 The
money from the robbery, as well as Yerba’s wallet and a handgun, were recovered
from appellant, who was taken into custody and indicted for aggravated robbery.
          At a pretrial hearing on August 1, 2005, the State confirmed that it was willing
to offer appellant a sentence of 28 years’ confinement, three years more than the
minimum sentence if appellant were convicted. The State indicated that it would ask
for a sentence of not less than 50 years’ confinement if appellant went to trial and was
found guilty. Appellant rejected the State’s offer and informed the trial court that he
was not satisfied with his court-appointed counsel. Appellant then stated that he
preferred to wear his orange jail suit to trial, rather than the civilian clothes provided
by his aunt. Despite admonitions from the trial court and his counsel regarding the
prejudicial effect of appearing before the jury in a jail suit, appellant insisted that he
would not wear civilian clothes to trial. At the conclusion of the hearing, and
immediately following the discussion involving appellant’s choice of attire for trial,
the trial court stated:
Let the record reflect that due to the Court’s observation of [appellant’s]
demeanor in the courtroom, the Court is very concerned about his
behavior during trial and I’m going to order that he be leg-ironed and
handcuffed at all times while in the courtroom during trial. You’re
going to be handcuffed during trial. Keep your hands beneath the table
so the jury will not see them. 

Appellant’s counsel objected, stating that shackling appellant for trial would be
prejudicial and would interfere with appellant’s ability to communicate with his
attorney during the trial. The trial court overruled the objection, noting that the
shackles would not be visible to the jury and that appellant would be free to
communicate verbally with his attorney. 
          Voir dire commenced the next day, August 2, 2005. Appellant, appearing in
his orange jail suit, held his shackled hands in plain view of the venire members,
despite the trial court’s prior instructions not to do so. Because appellant’s actions
openly exposed his shackles to the venire members, the trial court asked the
prospective jurors whether knowing that appellant was shackled would prevent them
from rendering a fair verdict. One venire member, who was subsequently dismissed,
indicated that he would be unable to presume appellant innocent in view of his being
shackled. Following the selection of the jury, to which appellant raised no objections,
the following exchange occurred, outside the presence of the jury:
COURT:I want the record to reflect that I had a lengthy
conversation with Mr. Wynn yesterday on the
record.


 The tenor of his voice in the courtroom was
uncooperative and combative. When I showed up
this morning for work, my bailiff, Gina Grahmann,
and my other bailiff, John Wheeler, reported to me
that they thought that—well, that Mr. Wynn was
going—was non-responsive, would not talk with
them, would not respond to any questions they asked
of him, like whether or not he was going to want to
get dressed out. Their opinion was that he was not
going to communicate and appeared to them to be
combative. They informed me that they had called
downstairs and asked for an extra deputy to be
assigned to this court, which the Sheriff’s
Department did so. We’ll have three deputies during
this trial. They asked me for a delay beginning the
trial until they had the opportunity to clear the 
holdover of all the other male inmates before they
brought Mr. Wynn out for trial. During the lunch
hour, Deputy Wheeler informed me that he took Mr.
Wynn his lunch and when he asked Mr. Wynn if he
wanted some lunch, he told Deputy Wheeler just to
throw it on the floor, in a very combative tone. Mr.
Wynn certainly knew yesterday I was going to
require him to be handcuffed during trial. He
certainly was aware yesterday he was going to be
allowed to sit in a manner where the handcuffs
would not in any way, shape, or form be visible to
the jury. And when Mr. Wynn was brought out
before the jury, he was brought out this morning
before the jury was brought in. There was no way,
because of the way the tables are positioned, that
any of the jurors could be aware he was leg-ironed. 
And from the second he sat down, Mr. Wynn chose
to sit down in a manner which allowed the handcuffs
to be visible by the jury. I’ve been through many
jury trials where I have had defendants handcuffed
during jury selection and during jury trial. I’ve
never had a juror observe that the defendant was
handcuffed, so there’s no doubt in my mind that the
manner in which Mr. Wynn was seated was a
conscious effort on his part to display the handcuffs
to the jury in a very defiant posture. Likewise, when
he was brought out of the holdover cell after the
lunch break, Mr. Wynn was observed by the bailiff
to be clinching his fists, holding them up before the
jury in a very defiant and combative manner. 
Because of the seriousness of the allegation in this
case and the range of punishment, there is no doubt
in my mind Mr. Wynn represents the highest, the
highest security risk to the participants during trial,
completely justifying my order to have him
handcuffed, and he will remain handcuffed for the
duration of the trial. Mr. Wynn, anything you want
to say about that?
 
          APPELLANT:(No verbal response).
 
COURT:Let the record reflect, once again, Mr. Wynn has 
                                         chosen to stand mute. All right. 
 
APPELLANT’S
          COUNSEL:           Judge, just a couple things in response to that Judge. First,
as far as to secure a future appellate record, we did discuss
this matter on the record yesterday in a pretrial hearing on
the 1st of August. I would request that if need be that be
made part of this record, whatever discussions we had
yesterday on the record regarding this and any other
pretrial matters, that that be attached to this record. Judge,
I would reiterate again that I have been provided a case, I
think it’s called Deck v. Missouri. I think it’s a 2005 case. 
I think, that the U.S. Supreme Court had just recently heard
regarding this issue of shackling a defendant. I think that
was even a capital murder case, I believe, that the Supreme
Court, I think, granted out of Missouri where, I guess, that
the defendant had been shackled, I guess, during the jury
penalty phase of the trial, Judge. I think they granted on
that case and found it was unconstitutional for a defendant
to be shackled during his trial, Judge. And at this point, I
believe Mr. Wynn has suffered the most egregious and the
most severe type of prejudice he can have by having him
shackled and restrained in leg irons during trial. I think
that’s what this case, I think, the Deck case that the
Supreme court has recently heard this spring, and we
would move for a mistrial at this point, Judge, because Mr.
Wynn, I think, has an absolute right to go to trial without
having the leg irons and the shackles, Judge, during this
case. I think there’s a strong presumption of guilt by
having him shackled and leg-ironed. I don’t believe that
this jury can render a fair and impartial verdict based
upon—just based upon that, basically, Judge, the fact that
he’s shackled and leg-ironed and handcuffed. 
 
COURT:Denied. 

          Appellant remained shackled throughout his trial. The jury found him guilty,
and the trial court assessed his punishment at confinement for life. This appeal
followed. 
DISCUSSION
          Shackling of Appellant During Trial
          In his first and second points of error, appellant contends that the trial court
violated his due process rights under the United States and Texas Constitutions by
requiring him to wear shackles throughout his trial. As a preliminary matter, we note
that appellate courts review a trial court’s decision to shackle a defendant during trial
in two stages. First, an appellate court must determine whether the trial court abused
its discretion in ordering the defendant to be shackled. Long v. State, 823 S.W.2d
259, 282 (Tex. Crim. App. 1991). Second, if it finds that the trial court did abuse its
discretion, the appellate court must determine whether the defendant suffered harm
as a result. Id. 
          The Fourteenth Amendment of the United States Constitution and Article I,
Section 19 of the Texas Constitution guarantee criminal defendants the right to a fair
trial. See Estelle v. Williams, 425 U.S. 501, 503, 96 S. Ct. 1691, 1692 (1976); Long,
823 S.W.2d at 282. Three constituent elements of this guarantee are directly
implicated by the shackling of a criminal defendant during trial proceedings. See
Deck v. Missouri, 544 U.S. 622, 630–31, 125 S. Ct. 2007, 2013 (2005). First, “the
criminal process presumes that the defendant is innocent until proven guilty.” Id. A
defendant who is visibly shackled does not have the benefit of this bedrock
presumption, and thus his right to a fair trial is fundamentally compromised. Id.;
Cooks v. State, 844 S.W.2d 697, 722 (Tex. Crim. App. 1992). Second, “the
Constitution, in order to help the accused secure a meaningful defense, provides him
with a right to counsel.” Deck, 544 U.S. at 631, 125 S. Ct. at 2013. The use of
shackles may undermine this right by impeding a defendant’s ability to effectively
communicate with his attorney. Id. Third, “[t]he routine use of shackles in the
presence of juries” compromises “[t]he courtroom’s formal dignity, which includes
the respectful treatment of defendants, reflects the importance of the matter at issue,
guilt or innocence, and the gravity with which Americans consider any deprivation
of an individual’s liberty through criminal punishment.” Id. 
          For the reasons stated above, “[t]he law has long forbidden routine use of
visible shackles during the guilt phase” of a criminal defendant’s trial. Id. at 626, 125
S. Ct. at 2010; Long, 823 S.W.2d at 282. Despite this general rule, courts recognize
that it may be necessary for certain defendants to be restrained in exceptional
circumstances. See Deck, 544 U.S. at 629, 125 S. Ct. at 2012; Long, 823 S.W.2d at
282. Such circumstances may arise, for instance, when a defendant has demonstrated
a propensity to escape or has threatened or assaulted courtroom personnel, thereby
implicating an essential state interest, namely, courtroom security. See Deck, 544
U.S. at 632, 125 S. Ct. at 2014; Long, 823 S.W.2d at 282. Prior to the use of
shackles, however, a trial court must make a specific finding that they are necessary
for reasons particular to a given case. See Deck, 544 U.S. at 627, 125 S. Ct. at 2011
(“[T]rial courts may not shackle defendants routinely, but only if there is a particular
reason to do so.”); Long, 823 S.W.2d at 283; see also Jacobs v. State, 787 S.W.2d
397, 407 (Tex. Crim. App. 1990). 
          The use of restraints, such as shackles, cannot be justified based on a general
appeal to the need for courtroom security or simple reference to the severity of the
charged offense. See Long, 823 S.W.2d at 283; Jacobs, 787 S.W.2d at 407. Rather,
a trial court must state with particularity its reasons for shackling a defendant. See
Long, 823 S.W.2d at 283. Such determinations are reviewed under an abuse of
discretion standard. Id. at 282. While mindful of preserving a trial court’s discretion
to determine whether restraints are necessary in a given case, “a decision to apply . . .
shackles to [a] defendant ‘must be subjected to close judicial scrutiny to determine
if there was an essential state interest furthered by compelling a defendant to wear
shackles.’” United States v. Durham, 287 F.3d 1297, 1304 (11th Cir. 2002) (quoting
Elledge v. Dugger, 823 F.2d 1439, 1451 (11th Cir. 1987) (per curiam), withdrawn in
part, 833 F.2d 250 (11th Cir. 1987)). In determining whether the trial court abused
its discretion in requiring the defendant to be tried with handcuffs, each case must be
evaluated on its own facts as reflected by the appellate record. Culverhouse v. State,
755 S.W.2d 856, 860 (Tex. Crim. App. 1988).
          Here, the trial court noted at the August 1 pretrial hearing that it was concerned
with appellant’s demeanor and was, therefore, ordering appellant to be shackled for
the duration of his trial. The trial court also noted that the deputies assigned to
appellant were sufficiently concerned with his uncooperative behavior to request the
assistance of another deputy during appellant’s trial, a request that was granted by the
Sheriff’s office. Despite having access to civilian clothes, appellant elected to wear
an orange jail suit to trial. Appellant also defied the trial court’s admonition by
displaying his handcuffs to the jury. Appellant also exhibited combative behavior by
instructing the deputy to throw his food on the floor, holding up his clenched fists
before the jury, and refusing to cooperate with his counsel and the deputies.
          Following voir dire, the trial court stated its reasons for shackling appellant on
the record. According to the trial court, appellant (1) exhibited a generally hostile
demeanor; (2) acted combatively toward courtroom deputies; (3) displayed clinched
fists to the jurors in a manner the trial court interpreted to be threatening; and (4)
purposefully defied the court’s instructions by revealing his shackles to the jurors. 
When given an opportunity either to deny or qualify the trial court’s enumeration of
its concerns, appellant chose to stand mute. Appellant’s counsel did object to his
client being shackled by appealing to recent United States Supreme Court precedent,
but counsel did not make any statements rebutting the trial court’s specific concerns
about appellant. Both the United States Supreme Court and the Texas Court of
Criminal Appeals have held that legitimate concerns over courtroom security will
justify the shackling of a criminal defendant for trial. See Deck, 544 U.S. at 632, 125
S. Ct. at 2014; Long, 823 S.W.2d at 282. We conclude that the trial court acted
within its discretion when it ordered appellant to be shackled for the duration of his
trial. 
          Moreover, even if we were to hold that the trial court erred in shackling
appellant, we would hold that appellant suffered no harm from the trial court’s error. 
When it concludes that shackling was within a trial court’s discretion, an appellate
court must determine whether the shackling constituted harmful error. See Tex. R.
App. P. 44.2(a). Because the use of shackles implicates constitutional rights,


 an
appellate court must “reverse a judgment of conviction or punishment unless [it]
determines beyond a reasonable doubt that the [shackling] did not contribute to the
conviction or punishment.” See id. Shackling has principally been held to be harmful
error when the shackles are detectable to the jurors or when the use of restraints
unduly restricts a defendant’s ability to communicate with counsel. See Deck, 544
U.S. at 630–31, 125 S. Ct. at 2013. According to the Court of Criminal Appeals, all
efforts should be undertaken to prevent the jury from seeing the defendant in
shackles, except when there has been a showing of exceptional circumstances or a
manifest need for such restraint. Long, 823 S.W.2d at 282.
          Here, the trial court noted on more than one occasion that appellant’s shackles
would not be visible to the jurors if appellant held his hands below the defendant’s
table. Appellant neither challenged this assessment nor asserted that keeping his
hands below the table was impracticable. Rather, appellant chose to reveal his
shackles to the jury. Thus, although the trial court undertook measures to ensure that
the jurors did not see appellant’s shackles, appellant nevertheless invited harm upon
himself. It is a well-settled principle of law that a criminal defendant cannot invite
error and then complain of it on appeal. See Prystash v. State, 3 S.W.3d 522, 532
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1102, 120 S. Ct. 1840 (2000). 
Therefore, because the record reflects that appellant, in addition to wearing an orange
jail suit at trial when civilian clothes were available, chose to display his shackles to
the jurors, appellant cannot argue on appeal that he was harmed as a result of being
shackled.
          We overrule appellant’s first and second points of error. 
          Cruel and Unusual Punishment and Due Process
          In his third and fourth points of error, appellant argues that the sentence for his
third felony offense constituted cruel and unusual punishment under the United States
Constitution and a violation of his due process rights under the Texas Constitution. 
Specifically, appellant contends that the trial court’s assessment of punishment of life
imprisonment was grossly disproportionate to his crime of aggravated robbery, even
when enhanced by two prior felony convictions.
          The record does not indicate that appellant objected at trial to the sentence of
life imprisonment. Nor did he raise these arguments in a motion for new trial. 
Failing to object in the trial court to an alleged disproportionate sentence waives any
error. Solis v. State, 945 S.W.2d 300, 301 (Tex. App.—Houston [1st Dist.] 1997, pet.
ref’d); Chapman v. State, 859 S.W.2d 509, 515 (Tex. App.—Houston [1st Dist.]
1993), rev’d on other grounds, 921 S.W.2d 694 (Tex. Crim. App. 1996). Therefore,
his arguments are not preserved for review. See Tex. R. App. P. 33.1(a).
          We overrule appellant’s third and fourth points of error.
CONCLUSION
          We affirm the judgment of the trial court.

 







                                                                        Evelyn V. Keyes
                                                                        Justice
 
Panel consists of Justices Taft, Keyes, and Hanks.
Publish. Tex. R. App. P. 47.2(b).