**Michael Ray WALTHALL, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 47479.

Court of Criminal Appeals of Texas.

Feb. 27, 1974.

Rehearing Denied March 20, 1974.

---

Jerry Patchen, Houston, for appellant.

Jerry A. Sandel, Dist. Atty., and Erwin G. Ernst, Deputy Dist. Atty., Huntsville, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is robbery; the punishment, eight (8) years.

Appellant's first contention is that the court erred in overruling his: (1) motion to quash the jury panel, (2) motion for mistrial, and (3) motion for new trial, all three of which were leveled at the fact that appellant was brought into the courtroom by the sheriff in handcuffs and *further bound by a chain 6½–7 feet in length.* At the time this happened a substantial majority of the jury panel from which appellant's jury was selected was seated in the courtroom. According to the sheriff he assumed that there were between 47 and 50 prospective jurors in the courtroom when he and appellant entered and that he and appellant walked within a foot or two of some of the prospective jurors while some were as far as 75 feet away from their path.

The following affidavit of William R. Browning, an attorney who was present in court on the day of the chain incident, was admitted in evidence at the hearing on the motion for new trial.

"My name is William R. Browning. On the 25th day of September, 1972, I was in Huntsville, Walker County, Texas, in the 12th Judicial District Courtroom, representing John and Pat Green for possession of narcotic drugs.

"A few minutes before 9:00 A.M., I was seated in the jury box, in the front row, next to an attorney who I did not know but who I later learned to be Jerry D. Patchen. I was waiting for the call of the docket. The courtroom is also used as the jury assembly room on Monday mornings. There were approximately forty (40) people who were assembled in the courtroom for prospective jury service. Shortly before 9:00 A.M., Sheriff White walked in with a young white male, who I later learned to be Michael Ray Walthall. Mike Walthall had handcuffs around his wrists and there was a chain that extended around his waist and between his legs holding the handcuffs down in front of him. As Mike Walthall entered the courtroom, Mr. Patchen seated next to me started

complaining and protesting to me, stating that he could not believe the sheriff had brought his client to the courtroom in handcuffs. I recall him saying that he felt the jury panel should be quashed. Mike Walthall was in the plain view of each and every member of the jury panel assembled for that week. I specifically noticed that when he was brought into the courtroom, virtually every person in the courtroom stared at and observed him. In fact, as Sheriff White walked in with Mike Walthall, there was kind of a hush that went over everybody, and everyone I suppose for curiosity sake started looking at the gentleman who was being brought in chained up by the Sheriff. I was seated further away from Mike Walthall than the individuals who were assembled for the jury panel, and the handcuffs and chains were clearly visible to me and certainly would have been visible to anyone seated virtually anywhere in the courtroom."

We are not unmindful of the fact that appellant had yet to be tried for a murder-robbery case in Houston and at the time of his arrest a shotgun was found near his bed. All of this might have been and probably was justification for the handcuffing and the chaining of the appellant on the trip from the jail to the courthouse, but we cannot say that it authorized bringing the appellant into the courtroom so manacled in full view of the jury which was to try him.[1] This is especially true since the sheriff testified that appellant had never given him any trouble and had never attempted to escape from him, and the record does not reflect that the sheriff feared appellant would harm himself or another.

A similar question was before this Court in Gray v. State, 99 Tex.Cr.R. 305, 268 S.W. 941, 269 S.W. 1056 (1925). On rehearing, Judge Hawkins speaking of the right of prisoner to be freed from shackles when brought into the courtroom for trial, pointed out that a reversal must follow unless the record reflects a good and sufficient reason for pursuing such extraordinary course.

In the words of Judge Hawkins, we have searched this record with care and have been unable to find any good and sufficient reason for such extraordinary handling of a prisoner.

We conclude that this display deprived this appellant of the presumption of innocence and constitutes reversible error.

The judgment is reversed, and the cause remanded.

---

1. Trial court should make the record affirmatively reflect the precautions taken, including all bodily restraints placed upon defendants together with his reasons for permitting the same. Such reasons should not be in general terms, but should reflect why the particular precautions taken in each case were required by particular conduct past or current on the part of the defendant.

This admonition to trial courts does not represent a new or novel attitude of this Court. Several recent cases of this Court have reiterated the directives given in Gray v. State, supra. In Romero v. State, 493 S.W.2d 206, we said:

" . . . every effort should be made to prevent the appellant from appearing in the presence of the jury in handcuffs. If, for security reasons, handcuffs or shackles are necessary, the trial judge should have the record clearly reflect the reasons therefor. See Ex parte Slaton, 484 S.W.2d 102 (Tex.Cr.App.1972)."

Compare Davis v. State, Tex.Cr.App., 505 S.W.2d 800 (decided February 20, 1974).