Juan Gomez Perez a/k/a Arturo Gomez Perez v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-227-CR

JUAN GOMEZ PEREZ A/K/A APPELLANT

ARTURO GOMEZ PEREZ

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

A jury convicted Appellant Juan Gomez Perez of aggravated sexual assault of a child under fourteen years of age and assessed his punishment at twenty-eight years’ confinement.  In four points, Appellant complains that the evidence is legally insufficient and that the trial court erred by admitting Appellant’s written statement, admitting a hospital record of the victim without deleting a sentence contained in it, and denying his motion for a mistrial.  We will affirm.

II.  Factual Background

On August 14, 1997, Appellant lived in an apartment in Arlington with his wife and four children.  Mrs. Perez was using the laundry room of a neighboring apartment complex to wash the family’s clothes, and she and her oldest son left their apartment for a few minutes to move some laundry from the washer to the dryer.  Appellant, his other son, and his daughter, L.S.P., remained at the apartment.  When Mrs. Perez returned, she tried to enter her apartment through the sliding glass patio door, which she had left unlocked. The door would not open; it was either jammed or locked.  Looking through the door, Mrs. Perez noticed a pair of pants on the floor.  Mrs. Perez walked to the apartment’s bedroom window and front door and knocked.  By the time she had circled around back to the patio door, it had been opened by Appellant, and the pants were gone from the floor. 

Her suspicions aroused, Mrs. Perez took her children outside and asked L.S.P. if her father had touched her genitalia.  L.S.P. “kind of nodded yes like.” Mrs. Perez telephoned her sister-in-law, but when she was not home, Mrs. Perez called her father.
(footnote: 2)  Mrs. Perez’s father went to the family’s apartment and called the police.  Police officers arrived, questioned Mrs. Perez, and arrested Appellant.  Appellant, who speaks only Spanish, later gave a written statement to officers, with the help of an interpreter, in which he admitted rubbing his genitalia against L.S.P.’s.  At trial, Appellant denied the alleged assault of L.S.P. Mrs. Perez testified at trial that she believes her previous accusations to be incorrect.  L.S.P., who was ten years old at the time of trial, testified that she did not remember anything from when she was four years old, her age at the time of the alleged incident. 

III.  Motion to Suppress

In his second point, Appellant complains that the trial court abused its discretion by denying his motion to suppress his written statement.  Specifically, Appellant contends that his statement was not voluntary because officers pressured him into making it and because he was unable to understand the statement, which was written in English, when he signed it. 

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  At a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  Therefore, we give almost total deference to the trial court’s ruling on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
Best
, 118 S.W.3d at 861-62.  However, we review de novo a trial court’s rulings on mixed questions of law and fact if they do not turn on the credibility and demeanor of witnesses.  
Johnson
, 68 S.W.3d at 652-53.

In determining whether a trial court’s decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later.  
Rachal v. State
, 917 S.W.2d 799, 809 (Tex. Crim. App.), 
cert. denied
, 519 U.S. 1043 (1996).  However, this general rule is inapplicable where the suppression issue has been consensually relitigated by the parties during the trial on the merits.  
Id
.  Here, Appellant testified at trial, raising the issue of the voluntariness of his statement.  Furthermore, the trial court instructed the jury that it must not consider Perez’s confession unless it found beyond a reasonable doubt that he gave it freely and voluntarily.  Because the suppression issue was relitigated by the parties during trial, we consider both the evidence adduced at the suppression hearing and the evidence admitted at trial in reviewing the trial court’s suppression ruling.  

The statement of an accused may be used in evidence if it was freely and voluntarily made without compulsion or persuasion.  
Tex. Code Crim. Proc. Ann.
 art. 38.21 (Vernon 1979).  The determination of whether a confession is voluntary is based on an examination of the totality of the circumstances surrounding its acquisition.  
Reed v. State
, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. ref’d).  A confession is involuntary if circumstances show that the defendant’s will was “overborne” by police coercion.  
Creager v. State, 
952 S.W.2d 852, 856 (Tex. Crim. App. 1997).  In other words, a statement is involuntary if the record reflects “official, coercive conduct of such a nature” that any statement obtained thereby is “unlikely to have been the product of an essentially free and unconstrained choice by its maker.”  
Alvarado v. State
, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).

Appellant argues that his statement was involuntary because “Strong and Garcia told [him] that if he claimed himself as guilty that everything was going to be better for him.”  Appellant contends “[t]hey also told him that if he continued to say he was not guilty, that he would get many years in prison.” Appellant appears to be arguing that these statements allegedly made by Detective Strong and Officer Garcia during the interview constitute some kind of an implied promise or promise of leniency.  

A promise induced confession will generally render the confession inadmissible.  
See Long v. State
, 823 S.W.2d 259, 277 (Tex. Crim. App. 1991), 
cert. denied
, 505 U.S. 1224 (1992).  A statement is involuntary and inadmissible if it is induced by a promise that is of some benefit to a defendant, is positive, made or sanctioned by someone in authority, and of such a character as would likely influence the defendant to speak untruthfully.  
See Muniz v. State
, 851 S.W.2d 238, 254 (Tex. Crim. App.), 
cert. denied
, 510 U.S. 837 (1993).  However, general statements made to a suspect regarding how a confession can sometimes result in leniency do not render a confession involuntary.  
See id
. 

Here, Officer Garcia testified that neither he nor Detective Strong made any such statement to Appellant.  The record demonstrates that Appellant had been read his rights on multiple occasions and was cognizant of the effect that giving a statement could have on him.
(footnote: 3)  In its findings of fact and conclusions of law, the trial court found that Appellant was competent to make a statement, that he knowingly, voluntarily, and intelligently waived the rights explained to him, and that he did not make the statement in response to coercion.  In its assessment of historical fact, the trial court was free to believe Detective Strong and Officer Garcia’s testimony that they did not make the above mentioned statements to Appellant.  
See Johnson
, 68 S.W.3d at 652-53.  Thus, giving almost total deference to the trial court’s ruling, we will not disturb its finding on this question of fact.  
See id
.  

Appellant further argues that his confession was obtained involuntarily because of circumstances surrounding the interpretation and translation of his statement.  Appellant states that “Strong did not know whether Officer Garcia translated precisely what the Appellant said, nor did she know if the written statement she wrote was [what] the Appellant said.”  Detective Strong testified that she did not speak Spanish.  Because she was not fluent in Spanish, she requested the assistance of an officer to interpret for her.  It is a logical conclusion that she “did not know whether Officer Garcia translated precisely what” Appellant said, as Officer Garcia was there to act as the interpreter.  A statement that is given orally in Spanish, interpreted by an officer, and written down in English is not per se inadmissible.  
See Montoya v. State
, 810 S.W.2d 160, 173-74 (Tex. Crim. App. 1989), 
cert. denied
, 502 U.S. 961 (1991).  

After examining the relevant testimony, we hold that there is ample evidence from which the trial judge could have concluded that Appellant gave his statement voluntarily.  
See, e.g., Hernandez v. State
, 118 S.W.3d 469, 474-75 (Tex. App.—Eastland 2003, pet. ref’d) (holding statement admissible when obtained through officer asking questions to defendant in Spanish then dictating answers in English).  We hold that the trial court did not abuse its discretion in denying Appellant’s motion to suppress his written statement.  We overrule Appellant’s second point.

IV.  Legal Sufficiency of the Evidence

In his first point, Appellant argues that the evidence is legally insufficient to support a finding that a sexual assault occurred.  The State argues, however, that the evidence as a whole is legally sufficient to support the jury’s verdict.
 
In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

A defendant’s extrajudicial confession must be corroborated by other evidence tending to show that a crime was committed.  
Williams v. State
, 958 S.W.2d 186, 190 (Tex. Crim. App. 1997).  This requirement is satisfied “if some evidence exists outside of the extra-judicial confession which, considered alone or in connection with the confession, shows that the crime actually occurred.”  
Salazar v. State
, 86 S.W.3d 640, 644-45 (Tex. Crim. App. 2002) (holding that evidence of the 
corpus deliciti 
in an aggravated sexual assault case existed despite Appellant’s repudiation of his extrajudicial confession).  

Such corroborating evidence exists here.  Officer John Morgan testified that in his initial interview with L.S.P., she stated that Appellant had touched her inappropriately.  Officer Morgan questioned L.S.P. a second time soon thereafter and her version of the facts remained the same.
(footnote: 4)  Araceli Desmarais, a sexual assault nurse, testified that there was redness around L.S.P.’s genitalia and that “[h]er exam and her history was very consistent with somebody that was abused.” 

Mrs. Perez’s testimony likewise supports the jury’s finding.  Although Mrs. Perez testified that she thought she was incorrect in previously believing that Appellant sexually assaulted L.S.P., she still testified that the sliding door was locked or jammed, that she saw pants on the floor through the door, and that L.S.P. indicated that Appellant had touched her genitalia.  Mrs. Perez now believes that L.S.P. was just repeating what she heard her mother say when she was “talking out loud to [herself].”  The jury, as factfinder, is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties.  
Moore v. State
, 935 S.W.2d 124, 126 (Tex. Crim. App. 1996), 
cert. denied
, 520 U.S. 1219 (1997).  Viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found the essential elements of the offense of sexual assault of a child under fourteen years of age beyond a reasonable doubt.  
See Jackson, 
443 U.S. at 319, 99 S. Ct. at 2789; 
Ware v. State
, 62 S.W.3d 344, 348-49 (Tex. App.—Fort Worth 2001, pet. ref’d) (holding evidence legally sufficient to support conviction for aggravated sexual assault of a child under age fourteen).  We overrule Appellant’s first point.

V.  Preservation And Probative Value Of Extraneous Statements

Nurse Desmarais examined L.S.P. after the alleged assault.  Desmarais’s record of her examination of L.S.P. indicates that “[w]hen asked if he [Appellant] has done this to her before she states yes.  When asked if anyone else has ever done this to her or touched her in a way she didn’t like she states ‘No, just my Daddy and he is in jail.’”  Appellant objected to the admission of this page of L.S.P.’s medical records, arguing that these statements should be redacted because they constitute evidence of extraneous offenses, hearsay, and are “highly prejudicial.” 
See
 
Tex. R. Evid.
 403, 802.  The trial court overruled Appellant’s objections, admitted Desmarais’s entire record, and further held that the probative value of the statements were not outweighed by their prejudicial effect.  

In his third point, Appellant argues that the trial court erred by admitting L.S.P.’s medical records into evidence without first deleting the above mentioned extraneous statement.  Specifically, Appellant argues that the State offered “[L.S.P.’s] medical records of the sexual examination on August 14, 1997 for the sole purpose of getting in the victim’s statement without having to call her as a witness and to get in extraneous evidence that the Appellant had allegedly done this before.”  Appellant further argues that the probative value of the statements is outweighed by their prejudicial effect.  The State responds that Appellant failed to preserve error by not objecting to L.S.P.’s medical record when it was used in front of the jury and that the statement is, nevertheless, admissible under article 38.37.  

We review a trial court’s decision to admit evidence under an abuse of discretion standard.  
Kelly v. State
, 824 S.W.2d 568, 573-74 (Tex. Crim. App. 1992); 
Montgomery v. State, 
810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).  The trial court has broad discretion in determining the admissibility of evidence and we may overturn the court’s ruling only if it is so clearly wrong that the ruling lies outside the zone of reasonable disagreement.  
See Montgomery
, 810 S.W.2d at 391.

We first address the State’s preservation contention.  
To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State,
 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999). With two exceptions, a party must continue to object each time the objectionable evidence is offered.  
Fuentes v. State
, 991 S.W.2d 267, 273 (Tex. Crim. App.), 
cert. denied,
 528 U.S. 1026 (1999); 
Ethington v. State,
 819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991).  The two exceptions require counsel to either (1) obtain a running objection or (2) request a hearing outside the presence of the jury.  
See Martinez v. State
, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003).  With regard to the second exception, if a trial court hears objections to proffered evidence outside the jury’s presence and rules that the evidence is admissible, the objections are deemed to apply to the evidence when it is admitted before the jury without the necessity of repeating the objections.  
Tex. R. Evid.
 103(a)(1); 
Geuder v. State,
 115 S.W.3d 11, 13-14 (Tex. Crim. App. 2003); 
Ethington
, 819 S.W.2d at 859.

Here, Appellant preserved error with regard to this point by objecting to the admission of L.S.P.’s medical records during the hearing outside the presence of the jury.  The trial judge admitted the record and overruled Appellant’s objections.  Pursuant to rule 103(a)(1) and 
Geuder
, Appellant need not have objected again when the State asked the testifying witness to read the objectionable portion of the record.  
See 
Tex. R. Evid.
 103(a)(1); 
Geuder
, 115 S.W.3d at 13-15.

Turning to the merits of Appellant’s argument, article 38.37 specifically allows for the admission of certain other crimes, wrongs or acts.  It states

Notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including

(1) the state of mind of the defendant and the child; and  

(2) the previous and subsequent relationship between the defendant and the child.

Tex. Code Crim. Proc. Ann.
 art. 38.37 (Vernon Supp. 2004-05).  However, rule 403 provides that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  
Tex. R. Evid.
 403.  A rule 403 analysis is still required even when the evidence is relevant under article 38.37.  
See Rojas v. State, 
986 S.W.2d 241, 250 (Tex. Crim. App. 1998); 
Poole v. State
, 974 S.W.2d 892, 897 (Tex. App.—Austin 1998, pet. ref’d).  In overruling the objection, the court is assumed to have conducted the required rule 403 balancing test.  
Poole
, 974 S.W.2d at 897
.

The evidence at issue—that Appellant had allegedly sexually assaulted L.S.P. on a previous occasion—is probative of both the previous relationship between the two and Appellant’s state of mind.  L.S.P. confided in Desmarais that this was not the first time Appellant had touched her in this manner.  The statement is also probative of Appellant’s state of mind because it shows his intent and ability to commit the act. 
See McCulloch v. State
, 39 S.W.3d 678, 681 (Tex. App.—Beaumont 2001, pet. ref’d); 
Poole
, 974 S.W.2d at 898.  The evidence is not graphically prejudicial.  No details of the purported prior incident were provided.  In terms of rule 403, the trial court overruled Appellant’s objections, and correctly concluded that the probative value of the statements was not outweighed by any prejudicial effect.  Therefore, we hold that the trial court did not abuse its discretion by concluding that the danger of unfair prejudice did not substantially outweigh the probative value of the extraneous acts involving Appellant.  
See Montgomery
, 810 S.W.2d at 391; 
Conrad v. State
, 10 S.W.3d 43, 45-46 (Tex. App.—Texarkana 1999, pet. ref’d) (concluding that videotape of extraneous acts was admissible pursuant to article 38.37); 
Hinojosa v. State,
 995 S.W.2d 955, 957 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding evidence of extraneous acts admissible pursuant to article 38.37 and probative value of evidence not outweighed by prejudicial effect)
.  Thus, the trial court did not abuse its discretion in denying Appellant’s request to delete the complained of portion of L.S.P.’s medical record.  We overrule Appellant’s third point. 

VI.  
Request for Mistrial
 

In his fourth point, Appellant argues that the trial court erred when it denied his request for a mistrial.  Specifically, he contends that a mistrial was warranted because the State allegedly elicited a response from Appellant that “allow[ed] the jury to know that the Appellant was in custody during the pendency of the trial.”  Appellant cites 
Moore v. State 
and 
Walthall v. State 
in support of this assertion.  
Moore v. State, 
535 S.W.2d 357 (Tex. Crim. App. 1976); 
Walthall v. State, 
505 S.W.2d 898 (Tex. Crim. App. 1974).  The State responds that it did not elicit such evidence from Appellant, that 
Moore 
and 
Walthall 
do not support his contention, and that any prejudice was cured by the trial court’s instruction to disregard. 

We review a trial court’s denial of a motion for new trial under an abuse of discretion standard.  
See Lewis v. State
, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995); 
Torrance v. State
, 59 S.W.3d 275, 276-77 (Tex. App.—Fort Worth 2001, pet. ref’d).  We are not to substitute our judgment for that of the trial court, but rather we are to decide whether the trial court’s decision was arbitrary or unreasonable.  
See Lewis, 
911 S.W.2d at 7.
 
 We will reverse the trial court’s decision only when it was so clearly wrong as to lie outside the zone of reasonable disagreement.  
Torrance
, 59 S.W.3d at 277.

During the cross examination of Appellant, the following exchange took place:

Q: [Prosecutor] And let me ask you, when was the last time that you visited with your daughter?

A: [Appellant] I don’t remember.

Q: [Prosecutor] You don’t know how long ago it was?

[Counsel for Appellant] It’s been asked and answered, your Honor.

[The Court] Sustained.

Q: [Prosecutor] Well, let me ask you, was - - is it more than six months or less than six months?

[Counsel for Appellant] Your Honor, once again, I object.  It’s been asked and answered.  He doesn’t recall.

[The Court] I’m going to allow that - - I’m going to allow that.

A: [Appellant] I don’t understand the question.

[Prosecutor] Well, Judge, may we approach briefly?

The State asked to approach because it believed Appellant had just said something to the effect of his presently being incarcerated.  The State made its request to approach, however, before Appellant’s interpreter had an opportunity to give his answer in English.  At the bench, counsel for the State said:

Well, Your Honor, the last question I asked the Defendant was: When was the last time that he saw his daughter.  Was it more than six months ago or less than six months ago.  If his response to the interpreter - - which we do not know what his response was at this point because we do not speak Spanish.  If his response was it was when he was in jail, it’s a nonresponsive answer.  It was not requested by the State.  I’m just trying to get a time.

The court asked Appellant’s interpreter what his response was, and the  interpreter stated Appellant answered, “How can I visit her if I’ve been in jail for eight months?”  The trial court took note that there was at least one Hispanic individual on the jury.  Counsel for Appellant argued that Appellant’s response concerning his incarceration was elicited by the State.  Counsel then requested that the court instruct the jury to disregard Appellant’s last statement, which it did.  Counsel further requested a mistrial, which the trial court denied. 

Here, the State did not intend to elicit the fact that Appellant was incarcerated at the time of trial.  To the contrary, the State attempted to inquire into how much contact Appellant had with L.S.P. between the time of his arrest and the time of trial.  In response to a question of when his last visit was, Appellant responded to a question by stating, “How can I visit her if I’ve been in jail for eight months?”  It is clear that the State did not inquire into the location of the last visit but when it occurred.  Appellant’s answer was nonresponsive.  Moreover, the State asked to approach the bench before Appellant’s interpreter gave his answer to the question.  While the court did take note that there was one Hispanic juror, it never inquired of the jury whether any of them actually spoke Spanish.  Therefore, we are unable to determine whether any juror understood Appellant’s answer.

Nonetheless, even if we assume that at least one juror understood Appellant’s answer, the trial court still correctly denied Appellant’s request for a mistrial.  Neither 
Moore 
nor 
Walthall
 stand for the proposition that Appellant makes—”that the Appellant has a right to be tried without the jury knowing he is incarcerated.”  
See Moore
, 535 S.W.2d at 357; 
Walthall
, 505 S.W.2d at 898.  Instead, both cases hold that allowing the jury panel to view a defendant while handcuffed results in the defendant’s constitutional presumption of innocence being infringed.  
See Moore
, 535 S.W.2d at 358; 
Walthall
, 505 S.W.2d at 899.  Here, it is not alleged that the jury observed Appellant in handcuffs or shackles.  The only issue raised by Appellant concerns his own nonresponsive answer.  Thus, the trial court did not abuse its discretion in denying Appellant’s request for a mistrial.  
See, e.g., Tanguma v. State
, 721 S.W.2d 408, 413 (Tex. App.—Corpus Christi 1986, pet. ref’d) (concluding that witness’s statement that he had spoken to defendant while defendant was in jail did not fall under the intended scope of 
Moore
).  We overrule Appellant’s fourth point.

VII.  Conclusion

Having overruled all of Appellant’s points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: HOLMAN, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: December 16, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Mrs. Perez’s father died before trial.

3:
We note that, on its face, Appellant’s statement complies with the requirements of section two of article 38.22 of the Texas Code of Criminal Procedure.  
Tex. Code Crim. Proc. Ann.
 art. 38.22 (Vernon 1979).

4:
Concerning the first interview with L.S.P., Officer Morgan testified: 

She [L.S.P.] said that her father had pulled down his pants and pulled down his toon-toons, which is what her terminology for underwear were, and also had pulled her pants down and her toon-toons and put his huevos in her huevos.  And huevos is her term used to describe her genitals and his genitals.

Concerning the second questioning of L.S.P., Officer Morgan testified: 

Again, she talked about how her father had pushed her down to the floor in the living room area by the sofa and - - and he pulled his pants down, pulled his underwear down, pulled her pants down, took her - - pulled her underwear down and made contact with his penis with her vaginal area.