COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-227-CR
 
  
JUAN 
GOMEZ PEREZ A/K/A                                                    APPELLANT
ARTURO 
GOMEZ PEREZ
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 371ST DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
 
I. Introduction
        A 
jury convicted Appellant Juan Gomez Perez of aggravated sexual assault of a 
child under fourteen years of age and assessed his punishment at twenty-eight 
years’ confinement.  In four points, Appellant complains that the 
evidence is legally insufficient and that the trial court erred by admitting 
Appellant’s written statement, admitting a hospital record of the victim 
without deleting a sentence contained in it, and denying his motion for a 
mistrial.  We will affirm.
II. Factual 
Background
        On 
August 14, 1997, Appellant lived in an apartment in Arlington with his wife and 
four children.  Mrs. Perez was using the laundry room of a neighboring 
apartment complex to wash the family’s clothes, and she and her oldest son 
left their apartment for a few minutes to move some laundry from the washer to 
the dryer.  Appellant, his other son, and his daughter, L.S.P., remained at 
the apartment.  When Mrs. Perez returned, she tried to enter her apartment 
through the sliding glass patio door, which she had left unlocked.  The 
door would not open; it was either jammed or locked.  Looking through the 
door, Mrs. Perez noticed a pair of pants on the floor.  Mrs. Perez walked 
to the apartment’s bedroom window and front door and knocked.  By the 
time she had circled around back to the patio door, it had been opened by 
Appellant, and the pants were gone from the floor.
        Her 
suspicions aroused, Mrs. Perez took her children outside and asked L.S.P. if her 
father had touched her genitalia.  L.S.P. “kind of nodded yes like.” 
Mrs. Perez telephoned her sister-in-law, but when she was not home, Mrs. Perez 
called her father.[2]  Mrs. Perez’s father went 
to the family’s apartment and called the police.  Police officers 
arrived, questioned Mrs. Perez, and arrested Appellant.  Appellant, who 
speaks only Spanish, later gave a written statement to officers, with the help 
of an interpreter, in which he admitted rubbing his genitalia against L.S.P.’s.  
At trial, Appellant denied the alleged assault of L.S.P.  Mrs. Perez 
testified at trial that she believes her previous accusations to be 
incorrect.  L.S.P., who was ten years old at the time of trial, testified 
that she did not remember anything from when she was four years old, her age at 
the time of the alleged incident.
III. Motion to 
Suppress
        In 
his second point, Appellant complains that the trial court abused its discretion 
by denying his motion to suppress his written statement.  Specifically, 
Appellant contends that his statement was not voluntary because officers 
pressured him into making it and because he was unable to understand the 
statement, which was written in English, when he signed it.
        We 
review a trial court’s ruling on a motion to suppress evidence under a 
bifurcated standard of review.  Carmouche v. State, 10 S.W.3d 323, 
327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. 
Crim. App. 1997).  In reviewing the trial court’s decision, we do not 
engage in our own factual review. Romero v. State, 800 S.W.2d 539, 543 
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. 
App.—Fort Worth 2003, no pet.).  At a suppression hearing, the trial 
judge is the sole trier of fact and judge of the credibility of the witnesses 
and the weight to be given to their testimony.  State v. Ross, 32 
S.W.3d 853, 855 (Tex. Crim. App. 2000).  Therefore, we give almost total 
deference to the trial court’s ruling on (1) questions of historical fact and 
(2) application-of-law-to-fact questions that turn on an evaluation of 
credibility and demeanor.  Johnson v. State, 68 S.W.3d 644, 652-53 
(Tex. Crim. App. 2002); Best, 118 S.W.3d at 861-62.  However, we 
review de novo a trial court’s rulings on mixed questions of law and fact if 
they do not turn on the credibility and demeanor of witnesses.  Johnson, 
68 S.W.3d at 652-53.
        In 
determining whether a trial court’s decision is supported by the record, we 
generally consider only evidence adduced at the suppression hearing because the 
ruling was based on it rather than evidence introduced later.  Rachal v. 
State, 917 S.W.2d 799, 809 (Tex. Crim. App.), cert. denied, 519 U.S. 
1043 (1996).  However, this general rule is inapplicable where the 
suppression issue has been consensually relitigated by the parties during the 
trial on the merits.  Id.  Here, Appellant testified at trial, 
raising the issue of the voluntariness of his statement.  Furthermore, the 
trial court instructed the jury that it must not consider Perez’s confession 
unless it found beyond a reasonable doubt that he gave it freely and 
voluntarily.  Because the suppression issue was relitigated by the parties 
during trial, we consider both the evidence adduced at the suppression hearing 
and the evidence admitted at trial in reviewing the trial court’s suppression 
ruling.
        The 
statement of an accused may be used in evidence if it was freely and voluntarily 
made without compulsion or persuasion.  Tex. Code Crim. Proc. Ann. art. 38.21 
(Vernon 1979).  The determination of whether a confession is voluntary is 
based on an examination of the totality of the circumstances surrounding its 
acquisition.  Reed v. State, 59 S.W.3d 278, 281 (Tex. App.—Fort 
Worth 2001, pet. ref’d).  A confession is involuntary if circumstances 
show that the defendant’s will was “overborne” by police coercion.  Creager 
v. State, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997).  In other words, 
a statement is involuntary if the record reflects “official, coercive conduct 
of such a nature” that any statement obtained thereby is “unlikely to have 
been the product of an essentially free and unconstrained choice by its 
maker.”  Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim. App. 
1995).
        Appellant 
argues that his statement was involuntary because “Strong and Garcia told 
[him] that if he claimed himself as guilty that everything was going to be 
better for him.”  Appellant contends “[t]hey also told him that if he 
continued to say he was not guilty, that he would get many years in 
prison.”  Appellant appears to be arguing that these statements allegedly 
made by Detective Strong and Officer Garcia during the interview constitute some 
kind of an implied promise or promise of leniency.
        A 
promise induced confession will generally render the confession 
inadmissible.  See Long v. State, 823 S.W.2d 259, 277 (Tex. Crim. 
App. 1991), cert. denied, 505 U.S. 1224 (1992).  A statement is 
involuntary and inadmissible if it is induced by a promise that is of some 
benefit to a defendant, is positive, made or sanctioned by someone in authority, 
and of such a character as would likely influence the defendant to speak 
untruthfully.  See Muniz v. State, 851 S.W.2d 238, 254 (Tex. Crim. 
App.), cert. denied, 510 U.S. 837 (1993).  However, general 
statements made to a suspect regarding how a confession can sometimes result in 
leniency do not render a confession involuntary.  See id.
        Here, 
Officer Garcia testified that neither he nor Detective Strong made any such 
statement to Appellant.  The record demonstrates that Appellant had been 
read his rights on multiple occasions and was cognizant of the effect that 
giving a statement could have on him.[3]  In its 
findings of fact and conclusions of law, the trial court found that Appellant 
was competent to make a statement, that he knowingly, voluntarily, and 
intelligently waived the rights explained to him, and that he did not make the 
statement in response to coercion. In its assessment of historical fact, the 
trial court was free to believe Detective Strong and Officer Garcia’s 
testimony that they did not make the above mentioned statements to 
Appellant.  See Johnson, 68 S.W.3d at 652-53.  Thus, giving 
almost total deference to the trial court’s ruling, we will not disturb its 
finding on this question of fact.  See id.
        Appellant 
further argues that his confession was obtained involuntarily because of 
circumstances surrounding the interpretation and translation of his 
statement.  Appellant states that “Strong did not know whether Officer 
Garcia translated precisely what the Appellant said, nor did she know if the 
written statement she wrote was [what] the Appellant said.”  Detective 
Strong testified that she did not speak Spanish.  Because she was not 
fluent in Spanish, she requested the assistance of an officer to interpret for 
her.  It is a logical conclusion that she “did not know whether Officer 
Garcia translated precisely what” Appellant said, as Officer Garcia was there 
to act as the interpreter.  A statement that is given orally in Spanish, 
interpreted by an officer, and written down in English is not per se 
inadmissible.  See Montoya v. State, 810 S.W.2d 160, 173-74 (Tex. 
Crim. App. 1989), cert. denied, 502 U.S. 961 (1991).
        After 
examining the relevant testimony, we hold that there is ample evidence from 
which the trial judge could have concluded that Appellant gave his statement 
voluntarily.  See, e.g., Hernandez v. State, 118 S.W.3d 469, 474-75 
(Tex. App.—Eastland 2003, pet. ref’d) (holding statement admissible when 
obtained through officer asking questions to defendant in Spanish then dictating 
answers in English).  We hold that the trial court did not abuse its 
discretion in denying Appellant’s motion to suppress his written 
statement.  We overrule Appellant’s second point.
IV. Legal 
Sufficiency of the Evidence
        In 
his first point, Appellant argues that the evidence is legally insufficient to 
support a finding that a sexual assault occurred.  The State argues, 
however, that the evidence as a whole is legally sufficient to support the 
jury’s verdict.
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the verdict in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden v. State, 55 
S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to 
the responsibility of the trier of fact to resolve conflicts in the testimony, 
to weigh the evidence, and to draw reasonable inferences from basic facts to 
ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.  
When performing a legal sufficiency review, we may not sit as a thirteenth 
juror, re-evaluating the weight and credibility of the evidence and, thus, 
substituting our judgment for that of the fact finder.  Dewberry v. 
State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 
U.S. 1131 (2000).
        A 
defendant’s extrajudicial confession must be corroborated by other evidence 
tending to show that a crime was committed.  Williams v. State, 958 
S.W.2d 186, 190 (Tex. Crim. App. 1997).  This requirement is satisfied 
“if some evidence exists outside of the extra-judicial confession which, 
considered alone or in connection with the confession, shows that the crime 
actually occurred.”  Salazar v. State, 86 S.W.3d 640, 644-45 (Tex. 
Crim. App. 2002) (holding that evidence of the corpus deliciti in an 
aggravated sexual assault case existed despite Appellant’s repudiation of his 
extrajudicial confession).
        Such 
corroborating evidence exists here. Officer John Morgan testified that in his 
initial interview with L.S.P., she stated that Appellant had touched her 
inappropriately.  Officer Morgan questioned L.S.P. a second time soon 
thereafter and her version of the facts remained the same.[4] 
 Araceli Desmarais, a sexual assault nurse, testified that there was 
redness around L.S.P.’s genitalia and that “[h]er exam and her history was 
very consistent with somebody that was abused.”
        Mrs. 
Perez’s testimony likewise supports the jury’s finding.  Although Mrs. 
Perez testified that she thought she was incorrect in previously believing that 
Appellant sexually assaulted L.S.P., she still testified that the sliding door 
was locked or jammed, that she saw pants on the floor through the door, and that 
L.S.P. indicated that Appellant had touched her genitalia.  Mrs. Perez now 
believes that L.S.P. was just repeating what she heard her mother say when she 
was “talking out loud to [herself].”  The jury, as factfinder, is 
entitled to judge the credibility of witnesses and can choose to believe all, 
some, or none of the testimony presented by the parties.  Moore v. State, 
935 S.W.2d 124, 126 (Tex. Crim. App. 1996), cert. denied, 520 U.S. 1219 
(1997).  Viewing the evidence in the light most favorable to the verdict, 
we hold that a rational trier of fact could have found the essential elements of 
the offense of sexual assault of a child under fourteen years of age beyond a 
reasonable doubt.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Ware 
v. State, 62 S.W.3d 344, 348-49 (Tex. App.—Fort Worth 2001, pet. ref’d) 
(holding evidence legally sufficient to support conviction for aggravated sexual 
assault of a child under age fourteen).  We overrule Appellant’s first 
point.
V. Preservation 
And Probative Value Of Extraneous Statements
        Nurse 
Desmarais examined L.S.P. after the alleged assault. Desmarais’s record of her 
examination of L.S.P. indicates that “[w]hen asked if he [Appellant] has done 
this to her before she states yes.  When asked if anyone else has ever done 
this to her or touched her in a way she didn’t like she states ‘No, just my 
Daddy and he is in jail.’”  Appellant objected to the admission of this 
page of L.S.P.’s medical records, arguing that these statements should be 
redacted because they constitute evidence of extraneous offenses, hearsay, and 
are “highly prejudicial.”  See Tex. R. Evid. 403, 802.  The trial 
court overruled Appellant’s objections, admitted Desmarais’s entire record, 
and further held that the probative value of the statements were not outweighed 
by their prejudicial effect.
        In 
his third point, Appellant argues that the trial court erred by admitting 
L.S.P.’s medical records into evidence without first deleting the above 
mentioned extraneous statement.  Specifically, Appellant argues that the 
State offered “[L.S.P.’s] medical records of the sexual examination on 
August 14, 1997 for the sole purpose of getting in the victim’s statement 
without having to call her as a witness and to get in extraneous evidence that 
the Appellant had allegedly done this before.”  Appellant further argues 
that the probative value of the statements is outweighed by their prejudicial 
effect.  The State responds that Appellant failed to preserve error by not 
objecting to L.S.P.’s medical record when it was used in front of the jury and 
that the statement is, nevertheless, admissible under article 38.37.
        We 
review a trial court’s decision to admit evidence under an abuse of discretion 
standard.  Kelly v. State, 824 S.W.2d 568, 573-74 (Tex. Crim. App. 
1992); Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) 
(op. on reh’g).  The trial court has broad discretion in determining the 
admissibility of evidence and we may overturn the court’s ruling only if it is 
so clearly wrong that the ruling lies outside the zone of reasonable 
disagreement.  See Montgomery, 810 S.W.2d at 391.
        We 
first address the State’s preservation contention.  To preserve a 
complaint for our review, a party must have presented to the trial court a 
timely request, objection, or motion that states the specific grounds for the 
desired ruling if they are not apparent from the context of the request, 
objection, or motion. Tex. R. App. P. 33.1(a)(1); Mosley v. 
State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), cert. 
denied, 526 U.S. 1070 (1999).  With two exceptions, a party must 
continue to object each time the objectionable evidence is offered.  Fuentes 
v. State, 991 S.W.2d 267, 273 (Tex. Crim. App.), cert. denied, 528 
U.S. 1026 (1999); Ethington v. State, 819 S.W.2d 854, 858-59 (Tex. Crim. 
App. 1991).  The two exceptions require counsel to either (1) obtain a 
running objection or (2) request a hearing outside the presence of the 
jury.  See Martinez v. State, 98 S.W.3d 189, 193 (Tex. Crim. App. 
2003).  With regard to the second exception, if a trial court hears 
objections to proffered evidence outside the jury’s presence and rules that 
the evidence is admissible, the objections are deemed to apply to the evidence 
when it is admitted before the jury without the necessity of repeating the 
objections. Tex. R. Evid. 103(a)(1); Geuder v. 
State, 115 S.W.3d 11, 13-14 (Tex. Crim. App. 2003); Ethington, 819 
S.W.2d at 859.
        Here, 
Appellant preserved error with regard to this point by objecting to the 
admission of L.S.P.’s medical records during the hearing outside the presence 
of the jury.  The trial judge admitted the record and overruled 
Appellant’s objections.  Pursuant to rule 103(a)(1) and Geuder, 
Appellant need not have objected again when the State asked the testifying 
witness to read the objectionable portion of the record.  See Tex. R. Evid. 103(a)(1); Geuder, 
115 S.W.3d at 13-15.
        Turning 
to the merits of Appellant’s argument, article 38.37 specifically allows for 
the admission of certain other crimes, wrongs or acts.  It states
  
Notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, evidence of 
other crimes, wrongs, or acts committed by the defendant against the child who 
is the victim of the alleged offense shall be admitted for its bearing on 
relevant matters, including
 
(1) 
the state of mind of the defendant and the child; and
 
(2) 
the previous and subsequent relationship between the defendant and the child.

Tex. Code Crim. Proc. Ann. art. 38.37 
(Vernon Supp. 2004-05).  However, rule 403 provides that evidence may be 
excluded if its probative value is substantially outweighed by the danger of 
unfair prejudice.  Tex. R. Evid. 
403.  A rule 403 analysis is still required even when the evidence is 
relevant under article 38.37.  See Rojas v. State, 986 S.W.2d 241, 
250 (Tex. Crim. App. 1998); Poole v. State, 974 S.W.2d 892, 897 (Tex. 
App.—Austin 1998, pet. ref’d).  In overruling the objection, the court 
is assumed to have conducted the required rule 403 balancing test.  Poole, 
974 S.W.2d at 897.
        The 
evidence at issue—that Appellant had allegedly sexually assaulted L.S.P. on a 
previous occasion—is probative of both the previous relationship between the 
two and Appellant’s state of mind.  L.S.P. confided in Desmarais that 
this was not the first time Appellant had touched her in this manner.  The 
statement is also probative of Appellant’s state of mind because it shows his 
intent and ability to commit the act.  See McCulloch v. State, 39 
S.W.3d 678, 681 (Tex. App.—Beaumont 2001, pet. ref’d); Poole, 974 
S.W.2d at 898.  The evidence is not graphically prejudicial.  No 
details of the purported prior incident were provided.  In terms of rule 
403, the trial court overruled Appellant’s objections, and correctly concluded 
that the probative value of the statements was not outweighed by any prejudicial 
effect.  Therefore, we hold that the trial court did not abuse its 
discretion by concluding that the danger of unfair prejudice did not 
substantially outweigh the probative value of the extraneous acts involving 
Appellant.  See Montgomery, 810 S.W.2d at 391; Conrad v. State, 
10 S.W.3d 43, 45-46 (Tex. App.—Texarkana 1999, pet. ref’d) (concluding that 
videotape of extraneous acts was admissible pursuant to article 38.37); Hinojosa 
v. State, 995 S.W.2d 955, 957 (Tex. App.—Houston [14th Dist.] 1999, no 
pet.) (holding evidence of extraneous acts admissible pursuant to article 38.37 
and probative value of evidence not outweighed by prejudicial effect).  
Thus, the trial court did not abuse its discretion in denying Appellant’s 
request to delete the complained of portion of L.S.P.’s medical record.  
We overrule Appellant’s third point.
VI. Request for 
Mistrial
        In 
his fourth point, Appellant argues that the trial court erred when it denied his 
request for a mistrial.  Specifically, he contends that a mistrial was 
warranted because the State allegedly elicited a response from Appellant that 
“allow[ed] the jury to know that the Appellant was in custody during the 
pendency of the trial.”  Appellant cites Moore v. State and Walthall 
v. State in support of this assertion.  Moore v. State, 535 
S.W.2d 357 (Tex. Crim. App. 1976); Walthall v. State, 505 S.W.2d 898 
(Tex. Crim. App. 1974).  The State responds that it did not elicit such 
evidence from Appellant, that Moore and Walthall do not support 
his contention, and that any prejudice was cured by the trial court’s 
instruction to disregard.
        We 
review a trial court’s denial of a motion for new trial under an abuse of 
discretion standard.  See Lewis v. State, 911 S.W.2d 1, 7 (Tex. 
Crim. App. 1995); Torrance v. State, 59 S.W.3d 275, 276-77 (Tex. 
App.—Fort Worth 2001, pet. ref’d).  We are not to substitute our 
judgment for that of the trial court, but rather we are to decide whether the 
trial court’s decision was arbitrary or unreasonable.  See Lewis, 
911 S.W.2d at 7.  We will reverse the trial court’s decision only when it 
was so clearly wrong as to lie outside the zone of reasonable 
disagreement.  Torrance, 59 S.W.3d at 277.
        During 
the cross examination of Appellant, the following exchange took place:
 
Q: [Prosecutor] And let me ask you, when was the last time that you visited with 
your daughter?
 
A: 
[Appellant] I don’t remember.
Q: 
[Prosecutor] You don’t know how long ago it was?
[Counsel 
for Appellant] It’s been asked and answered, your Honor.
 
[The 
Court] Sustained.
Q: 
[Prosecutor] Well, let me ask you, was - - is it more than six months or less 
than six months?
 
[Counsel 
for Appellant] Your Honor, once again, I object.  It’s been asked and 
answered. He doesn’t recall.
 
[The 
Court] I’m going to allow that - - I’m going to allow that.
A: 
[Appellant] I don’t understand the question.
[Prosecutor] 
Well, Judge, may we approach briefly?
 
The 
State asked to approach because it believed Appellant had just said something to 
the effect of his presently being incarcerated.  The State made its request 
to approach, however, before Appellant’s interpreter had an opportunity to 
give his answer in English.  At the bench, counsel for the State said:
  
Well, Your Honor, the last question I asked the Defendant was: When was the last 
time that he saw his daughter.  Was it more than six months ago or less 
than six months ago.  If his response to the interpreter - - which we do 
not know what his response was at this point because we do not speak 
Spanish.  If his response was it was when he was in jail, it’s a 
nonresponsive answer.  It was not requested by the State.  I’m just 
trying to get a time.
 
 
The 
court asked Appellant’s interpreter what his response was, and the interpreter 
stated Appellant answered, “How can I visit her if I’ve been in jail for 
eight months?”  The trial court took note that there was at least one 
Hispanic individual on the jury.  Counsel for Appellant argued that 
Appellant’s response concerning his incarceration was elicited by the 
State.  Counsel then requested that the court instruct the jury to 
disregard Appellant’s last statement, which it did.  Counsel further 
requested a mistrial, which the trial court denied.
        Here, 
the State did not intend to elicit the fact that Appellant was incarcerated at 
the time of trial.  To the contrary, the State attempted to inquire into 
how much contact Appellant had with L.S.P. between the time of his arrest and 
the time of trial.  In response to a question of when his last visit was, 
Appellant responded to a question by stating, “How can I visit her if I’ve 
been in jail for eight months?”  It is clear that the State did not 
inquire into the location of the last visit but when it occurred.  
Appellant’s answer was nonresponsive.  Moreover, the State asked to 
approach the bench before Appellant’s interpreter gave his answer to the 
question.  While the court did take note that there was one Hispanic juror, 
it never inquired of the jury whether any of them actually spoke Spanish.  
Therefore, we are unable to determine whether any juror understood Appellant’s 
answer.
        Nonetheless, 
even if we assume that at least one juror understood Appellant’s answer, the 
trial court still correctly denied Appellant’s request for a mistrial.  
Neither Moore nor Walthall stand for the proposition that 
Appellant makes—”that the Appellant has a right to be tried without the jury 
knowing he is incarcerated.”  See Moore, 535 S.W.2d at 357; Walthall, 
505 S.W.2d at 898.  Instead, both cases hold that allowing the jury panel 
to view a defendant while handcuffed results in the defendant’s constitutional 
presumption of innocence being infringed.  See Moore, 535 S.W.2d at 
358; Walthall, 505 S.W.2d at 899. Here, it is not alleged that the jury 
observed Appellant in handcuffs or shackles.  The only issue raised by 
Appellant concerns his own nonresponsive answer.  Thus, the trial court did 
not abuse its discretion in denying Appellant’s request for a mistrial.  See, 
e.g., Tanguma v. State, 721 S.W.2d 408, 413 (Tex. App.—Corpus Christi 
1986, pet. ref’d) (concluding that witness’s statement that he had spoken to 
defendant while defendant was in jail did not fall under the intended scope of Moore).  
We overrule Appellant’s fourth point.
VII. Conclusion
        Having 
overruled all of Appellant’s points, we affirm the trial court’s judgment.
 
  
                                                                  SUE 
WALKER
                                                                  JUSTICE
 
  
PANEL 
B:   HOLMAN, WALKER, and MCCOY, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
December 16, 2004

NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Mrs. Perez’s father died before trial.
3.  
We note that, on its face, Appellant’s statement complies with the 
requirements of section two of article 38.22 of the Texas Code of Criminal 
Procedure.  Tex. Code Crim. Proc. 
Ann. art. 38.22 (Vernon 1979).
4.  
Concerning the first interview with L.S.P., Officer Morgan testified:
 
She [L.S.P.] said that her father had pulled down his pants and pulled down his 
toon-toons, which is what her terminology for underwear were, and also had 
pulled her pants down and her toon-toons and put his huevos in her huevos.  
And huevos is her term used to describe her genitals and his genitals.
  
Concerning 
the second questioning of L.S.P., Officer Morgan testified:
   
Again, she talked about how her father had pushed her down to the floor in the 
living room area by the sofa and - - and he pulled his pants down, pulled his 
underwear down, pulled her pants down, took her - - pulled her underwear down 
and made contact with his penis with her vaginal area.